Davis, Appellant, *v.* Ebensburg Trust Co. et al.

Argued March 24, 1931. Before FRAZER, C. J., WALL-ING, SIMPSON, SCHAFFER and MAXEY, JJ.

*Ray Patton Smith,* for appellant.—Appellees are trustees ex maleficio of appellant's property, and the proceeds therefrom: Cameron v. Townsend, 286 Pa. 393; Luther v. Luther, 242 Pa. 530; Gates v. Keichline, 282 Pa. 584; Hartzell v. Whitmore, 271 Pa. 575; Cowperthwait v. Bank, 102 Pa. 397; Wolford v. Herrington, 86 Pa. 39; Hamnett v. Trust Co., 223 Pa. 247; Sweetzer's App., 71 Pa. 264; McDonald v. McAndrew, 40 Pa. Superior Ct. 146.

A confidential relation exists: Fisk v. Sarber, 6 W. & S. 18; Cameron v. Townsend, 286 Pa. 393; Hatcher v. Hatcher, 264 Pa. 105; Seichrist's App., 66 Pa. 237; Whitman v. O'Brien, 29 Pa. Superior Ct. 208; Bachrach v. Fleming, 269 Pa. 350; Church v. Winton, 196 Pa. 107.

The purchase money for the sheriff's sale was, in effect, paid by appellant: Lukens v. Church, 296 Pa. 1; Keck v. VanDyke, 292 Pa. 532; Epstein v. Ratkosky, 283 Pa. 168; Casciola v. Donatelli, 218 Pa. 624; King v. King, 281 Pa. 511; Gates v. Keichline, 282 Pa. 584; Conyngham's App., 57 Pa. 474.

*Philip N. Shettig,* with him *Charles C. Greer,* for appellees.—Appellees were not required to answer appellant's bill of complaint and the amendment thereto, as the same did not set out a cause of action cognizable in equity, and appellant was never in court.

OPINION BY MR. JUSTICE MAXEY, May 25, 1931:

This case comes before us on a bill in equity which was dismissed by the court below. The bill sets forth the following:

T. Stanton Davis, the plaintiff, some years prior to August 12, 1926, was a depositor in the Cambria Title, Savings and Trust Company, and during the years of 1923, 1924 and 1925, he had many business transactions with the trust company and his deposits amounted from fifty-six to seventy-one thousand dollars each year. He had numerous obligations in the trust company requiring him to issue checks from time to time for his various obligations and the interest thereon.

The trust company frequently made deductions from his account by what are known as "charge slips" and on other occasions checks were drawn on the plaintiff's account and signed with his name, by a representative of the trust company, and the exact amount thus deducted the plaintiff is unable to state. On the 12th day of August, 1926, the defendant, Ebensburg Trust Company, purchased all the assets of the Cambria Title, Savings and Trust Company for the consideration of one dollar a share. On August 20, 1920, the plaintiff, together with Leo C. Kimball, I. E. Lewis and one John Denny, purchased from Eleanor G. Park and Lewis Anderson Park the premises described in the plaintiff's bill, known as "The Park Property." Subsequently, John Denny conveyed his undivided one-fourth interest therein to T. Stanton Davis, the plaintiff in this case, who thereupon became the owner of an undivided one-half interest.

At the time of the purchase of the property, the plaintiff herein, together with his cotenants, made, executed and delivered a purchase-money mortgage to Eleanor G. Park and Lewis A. Park in the sum of $67,500. On the 6th day of August, 1925, Eleanor G. Park and Lewis A. Park assigned a part of the mortgage, to wit, the sum of $39,046.94, made up of $28,400 of the principal sum, and $10,678.47 accrued interest thereon, to the Cambria Title, Savings and Trust Company.

On the 12th day of August, 1926, the Cambria Title, Savings and Trust Company assigned to George E. Prindible, president of the Ebensburg Trust Company, and also a defendant in this suit, the interest of the Cambria Title, Savings and Trust Company in the portion of a mortgage originally assigned to that company by Eleanor G. Park and Lewis A. Park.

On the 18th day of September, 1926, Eleanor G. Park and Lewis A. Park assigned the balance of the mortgage, with interest, for a consideration of $40,501.13, to George E. Prindible, president of the Ebensburg Trust Company, and the plaintiff alleges that Prindible acquired the title to the same for and on behalf of the said Ebensburg Trust Company. The plaintiff further alleges that prior to the assignment of the mortgage to Prindible he had paid for and on account of the mortgage the sum of $9,000.

Subsequent to the acquiring of the mortgage by Prindible, president of the trust company, a judgment was entered upon the bond accompanying the mortgage, and on the 7th day of March, 1927, the property described in the bill was purchased by Prindible for $9,400.

On the 14th day of September, 1926, the plaintiff and the other two owners of the property were heavily indebted to the defendant, the Ebensburg Trust Company.

The plaintiff and the other two owners of this property, Lewis and Kimball, on the 14th day of September, 1926, made, executed and delivered to the Ebensburg Trust Company a deed for the premises described

in the plaintiff's bill. The bill alleges that the Ebensburg Trust Company coerced Davis to join in a deed with Lewis and Kimball to convey title of the land to the Ebensburg Trust Company, representing and promising that the title thereto should remain vested in the trust company to make sale thereof for the purpose of paying the indebtedness of Lewis, Kimball and T. Stanton Davis and Louis M. Davis to the defendant, Ebensburg Trust Company, after which the Ebensburg Trust Company was to make distribution of any surplus coming into its hands to I. E. Lewis, Leo C. Kimball and T. Stanton Davis.

The bill also sets forth that plaintiff was employed by the defendant company for the purpose of making sales of parts of said land, on which sales the defendant company was to pay the plaintiff a commission.

Plaintiff avers further that at the time of the assignment of the interest of the Cambria Title, Savings and Trust Company in the Park mortgage to the defendant Prindible, the latter paid no adequate consideration for the same, that at the time of the assignment the plaintiff had an interest in the mortgage to the extent of $9,000, this being the sum he had paid on the mortgage, that in the assignment from Eleanor G. Park and Lewis A. Park, and also in the assignment from the Cambria Title, Savings and Trust Company to Prindible, the latter was acting as agent for the Ebensburg Trust Company, and that at the time of the sheriff's sale of the described premises plaintiff was informed by one of the officers of the Ebensburg Trust Company that it would be unnecessary for the plaintiff to attend the sale as the defendant company would protect his interest.

The plaintiff also claims that the sum of $5,000 was received by the Cambria Title, Savings and Trust Company from the sale of a right of way over the property owned by the plaintiff, that the title to this right of way was obtained by the trust company through a judicial sale, and that the trust company agreed to apply the

proceeds of the sale to the indebtedness of the plaintiff, but no accounting was ever made to the plaintiff for the proceeds; that subsequent to the transfer of the title to the Ebensburg Trust Company the plaintiff procured a purchaser for a part of the property, which purchaser paid the trust company $6,000, that he procured a tenant for the hotel property located on the plot, and that the rent therefor was paid to the Ebensburg Trust Company, and for this there has been no accounting. Plaintiff further alleged in a petition (hereinafter referred to) to amend the bill that in 1925 the plaintiff procured a purchaser for another right of way through the described property for $14,000, and that subsequently, under date of May 19, 1927, Prindible made, executed and delivered a deed for the right of way to the grantee therein, and received the entire consideration for the same, and for this no account has been made to the plaintiff; that the defendants have refused to account to the plaintiff for the proceeds, amounting to $5,000, derived from a certain sale of another right of way over property owned by the plaintiff; that in September, 1930, the plaintiff received a statement from the defendant companies purporting to show his indebtedness to them but the statement is incorrect and plaintiff is unable to get from the defendant companies any accurate account of his indebtedness to either of them, as well as a list of his collateral.

The plaintiff in the bill filed asked that the defendant company be restrained from conveying or encumbering the property described; that the defendants be held a trustee of all money received from the sale of any part of the premises; that the defendant company account to the plaintiff for all moneys received from the sale of portions of the property described; that when an account is stated and approved the defendants pay over to the plaintiff the amount found due the plaintiff by the defendants by said account, with interest; and that the defendants be ordered and directed to convey to the

plaintiff the portion of the plaintiff's property not heretofore sold.

Preliminary objections were made to the bill on the ground that "the court of equity has no jurisdiction to direct an account, an injunction or a transfer, for the following reasons [inter alia]: ...... That the accounts are not mutual and no discovery is prayed for. ...... There is no allegation that there are any balances in the hands of the defendants to be distributed. ...... There is no allegation of mutual mistake or complicated accounts. ...... That an agreement was made among all parties that Cambria Title, Savings and Trust Company and its successor, Ebensburg Trust Company, were to hold the real estate and dispose of same and apply the purchase money to the payment of the debts of plaintiff and I. E. Lewis and Leo C. Kimball. Equity will not require an accounting contrary to such agreement."

The court on August 25, 1930, dismissed the bill. On October 15, 1930, the plaintiff presented to the court a petition for leave to further amend the bill. Twelve days later the court filed an order denying the petition and declaring that there was "nothing in this petition which, if added to the original bill, would change the situation."

In the opinion supporting the order dismissing the bill, the court said, inter alia: "The substance of the contention of the plaintiff is that the defendant should be compelled to turn back to him certain real estate which was admittedly transferred for the purpose of securing the debts of the plaintiff to the Ebensburg Trust Company, without even offering to pay said indebtedness, and without offering to reimburse the trustee for the payment of moneys in acquiring the first mortgage, as well as the payment of the money at the sheriff's sale, both of which, under the allegations in the bill, would be for the benefit of the plaintiff's title in said real estate, if any, and in order to preserve the same. ...... There is no allegation that any money

was received by the Ebensburg Trust Company except the sum of $6,000, and this would not even cover the expenditures that the trust company has made in the interest of plaintiff's property. ...... The bill not only does not set up any effort or willingness to reimburse the defendants, but, when the matter comes up at argument, the plaintiff, through his counsel, positively states that he has no such intention and will not make such an offer, and this in the face of an offer by counsel for the defendants that a reconveyance would be promptly made if they were made whole. ...... In our judgment there is nothing in the entire bill, originally and as amended, that gives this court any jurisdiction, or the plaintiff any right to the relief he seeks."

We hold that the plaintiff made out a prima facie case entitling him to an accounting by the Ebensburg Trust Company for all moneys received from the sale of portions of plaintiff's property described in the bill, including commissions payable to the plaintiff. The court below emphasized the failure of the plaintiff to pay any indebtedness that might be due from him to the Ebensburg Trust Company and his failure to offer to reimburse the trustee for the payment of moneys in acquiring the first mortgage, as well as the payment of the money at the sheriff's sale. The plaintiff, if he was not able to ascertain what his indebtedness to the defendant company was, could make no such tender as the court below declared he should have made. The plaintiff's course of dealing with the Cambria Title, Savings and Trust Company and the Ebensburg Trust Company covered a long period and included a large number of transactions.

The plaintiff avers in his bill as amended that at the time of the sale of the property described in the bill, which was known as "The Park Property," on the 7th day of March, 1927, he had an interest in the mortgage and bond on which the foreclosure took place, in that he had paid approximately $9,000 in cash at the time of

the assignment of the mortgage to the Ebensburg Trust Company. He avers that he obtained a purchaser for part of the Park property and that this purchaser paid to the Ebensburg Trust Company the sum of $6,000 for the property, and that he succeeded in getting a tenant for the hotel property which is a part of the Park property in order that the property might amount to a further asset to the Ebensburg Trust Company and the plaintiff's indebtedness to the trust company be thereby further reduced.

The defendant company admits that it holds the property described in the bill as security for the indebtedness to the plaintiff, and it is conceded that certain sums of money were received from sales of certain portions of the property described in the bill.

We believe that the plaintiff is entitled to an accounting in order that he may know the amount actually owing by him to the defendant company and that it is not prerequisite to his right to an accounting that he offer to reimburse the defendant company at the time of the filing of the bill. In Conyngham's App., 57 Pa. 474, this court said: "But when the pledge is, as in this case, collateral security for the payment of all claims, liabilities and demands, which the pledgee then held or might thereafter hold against the pledgor, and these claims and liabilities are alleged to consist of a large number of items of moneys loaned, notes discounted on the endorsements of others for his accommodation, and endorsements by him for the accommodation of others, it is evident that the case comes within the jurisdiction of a court of equity under the head of account. ......
Judge STORY has accurately stated the received doctrine on this subject: 1 Eq. Jur., section 506: 'Liens also give rise to matters of account. ...... As no suit is maintainable at law for the property of the owner, until the lien is discharged, and as the nature and amount of the lien often are involved in great uncertainty, a resort to a court of equity to ascertain and adjust the account

seems, in many cases, absolutely indispensable for the purposes of justice. ...... Cases of pledges present a similar illustration, whenever they involve indefinite and unascertained charges and accounts.' It is clear that without an account, as well of the items of charge as of the dividends received in money and stock, the pledgor could not know what amount to tender, and this is an indispensable condition to his right to maintain any action at law. There are many precedents in the equity reports of bills to redeem the pledge and for an account under similar circumstances."

In the case of McGeary v. Jenkins et al., 187 Pa. 440, at 444 et seq., the court said: "The bill clearly presented a case for the intervention of a court of equity for the preservation and protection of the rights of the parties, and a tender of the amount expended by Jenkins in the purchase of the property was not, under the circumstances, necessary to the maintenance of it. ...... The money intended to be used in payment of the arrears was invested by Jenkins in the purchase of the property, and although he claims to have an absolute title it is obvious that the plaintiff is entitled to a conveyance on reimbursing him for his expenditures, the amount of which is not made clear by his answers. In fact there is a material disagreement between the plaintiff and the defendants as to the amount due on her debt to the building and loan association, as to the amount advanced by Jenkins, and as to the amount furnished by her to him. A tender under such conditions is not required, or practicable. ...... In view of the averments and answers the learned court below, instead of dismissing the bill, should have investigated the accounts to determine the proper credits to be allowed for payment to the building and loan association, if any, and the amounts properly expended by Jenkins, and a decree should thereafter have been entered for the conveyance of the property to the plaintiff, conditioned

upon the payment by her of the amount found to be due to him, within a reasonable time fixed by the decree."

The plaintiff in his bill made out no prima facie case of fraud against the defendant and pleaded no facts which would entitle him to any of the relief he prayed for except for that asked for in prayer (c), which was for an accounting of all moneys received from the sale of the portion of the plaintiff's property, including commissions payable to the plaintiff. We would, however, reverse the decree dismissing the bill were it not for the fact that by supplemental record filed in this case it appears that on February 10, 1931, the secretary of banking of the Commonwealth of Pennsylvania by virtue of the authority vested in him by act of assembly No. 316, approved June 15, 1923, has taken possession of the business and property of the Ebensburg Trust Company, defendant in this case, and has appointed an agent to assist the department of banking in continuing or liquidating the property and business of the Ebensburg Trust Company.

In view of the altered situation thus brought to our attention by the supplemental record, we will not reverse the decree of the court below, but will affirm it, without prejudice to the rights of the petitioner to apply to the banking department of the Commonwealth of Pennsylvania for the accounting prayed for in prayer (c) of the bill filed in this case, and without prejudice to his right to file a bill for an accounting against the defendant if the banking department of the Commonwealth of Pennsylvania returns the possession of the business and property of the Ebensburg Trust Company to the executive officers of that company.

The decree is affirmed at the cost of appellant.