## DEWBERRY et al. v. BANK OF STAND-ING ROCK et al.

### 5 Div. 122.

Supreme Court of Alabama.

May 11, 1933.

Rehearing Denied June 22, 1933.

Further Rehearing Denied Nov. 9, 1933.

Walter S. Smith, of Birmingham, for appellants.

Denson & Denson, of Opelika, for appellees.

THOMAS, Justice.

The bill sought relief by way of accounting, discovery, cancellation of two mortgages, and foreclosure deeds of the husband and wife's lands, and in the alternative, redemption by offer to pay the sum found due respondents.

The original bill was filed August 23, 1928; the mortgages were of dates of February 20 and September 25, 1924; the two foreclosure deeds were of date of May 28, 1927. The bill as amended was in several aspects—averring payment, charged fraud in procuring the mortgages that rendered same null and void; sought discovery and accounting, cancellation, redemption, and general relief.

It was averred that on written demand the possession was surrendered and that the re-

spondents are now in possession, and have been since delivery of possession after the alleged foreclosure.

There were answers presenting issues of fact on the several phases, and after the evidence was taken there was a decree for the respondents, and the bill was dismissed at the cost of the complainants; hence the appeal by each of the complainants.

The specific matters complained of are the two mortgages we have indicated as securing an alleged indebtedness of $3,539.04 and $726.06; of the former it is alleged there was fraud in procuring the signature, and the wife's land was made to secure the husband's debt; the latter embraced the property of the wife and security for the husband's debts.

██ Interrogatories were exhibited to respondent Hines, calling for answer under section 6570, Code of 1928, that was cumulative of the discovery sought by the bill. Ex parte Kelly (Kelly v. Carmichael), 221 Ala. 339, 128 So. 443; Rosenau v. Powell, 173 Ala. 123, 55 So. 789; Goodall-Brown & Co. et al. v. Ray, 168 Ala. 350, 53 So. 137. The final decree was rendered denying relief to complainants before the return day fixed by the register for answer to the interrogatories. It is noted that the interrogatories were propounded by way of amendment after evidence was taken and documents and copies of books called for were before the court, though the accounts were not in a condensed form, and witnesses had been examined in reference to such accounts and documents.

In Ex parte Kelly (Kelly v. Carmichael), 221 Ala. 339, 128 So. 443, the observation is that the decree rendered without final submission before answer, etc., was void, that the right of interrogatory was cumulative to the right of discovery sought, and that all the parties were before the court and had the opportunity to elicit the facts called for in the "interrogatories so lately filed in the cause." Such was the instant case. The interrogatories should have been answered pursuant to statute, but we will not reverse for the reason last stated.

The decree was without a reference or statement of accounts by the register or by the court. The decree recites as to this:

"The cross-examination of the witness C. E. Hines was not before the court but was before a commissioner, and there has been no certificate of any facts or refusal to answer filed with the court by the commissioner.

"The court has examined the bill as amended and, taken in connection with the answer to the petition, and with the fact, which the court necessarily knows, that the books and papers of the Bank are already in evidence in the case, and were so at the time the bill was amended to include interrogatories requiring copies of these books and papers, the court is of the opinion that the interroga-

tories in the bill are not such as to require action on the part of this court.

"By statute, the interrogatories filed by the complainants on, to-wit, February 5, 1930, are not required to be answered by the respondents until after thirty days notice to them by the register; the hearing in this cause was fixed for this date by an order of this court made on December 2, 1929, and obviously respondents cannot be placed in contempt or penalized for failing to answer the interrogatories by the time of the hearing, and the court is not of the opinion that the respondent is in contempt for failure to answer these interrogatories of this date.

"The court has considered the petition, together with the answer of the respondent, and together with the other papers on file in the case, and together with the evidence which has been filed in the case, and is of the opinion that the petition should be denied."

█ There was no evidence before the court (except by a layman) as to the services rendered and the reasonableness of attorney's fees charged or allowed as against the mortgagors. In this item there was error in the inclusion in the mortgage and allowance of such sum, on the testimony offered.

██ It is observed of bills for accounting that the judge hearing the cause has the right to restate the account in his own way, in order that the court may arrive at a correct conclusion, and to so state it that the parties may understand on what the court acted, and so that it may be incorporated in the judgment. Compton et al. v. Collins et al., 197 Ala. 642, 73 So. 334; Curtis v. Curtis, 180 Ala. 70, 60 So. 165; Kelly v. Wollner, 201 Ala. 445, 78 So. 823. Here, the court did not state the account or refer the same to the register so to do. The account is complicated, covering many items and transactions with the bank and its depositors, with the merchants and their customers, and extending over many years. The court merely stated the conclusion as we have indicated—that the mortgages were unpaid at foreclosure, etc.

We believe this was a case for an accounting covering items and balances of accounts, and those due as to payments made on the several notes and the mortgages, of the application of payments to the notes, or if duly directed by the mortgagor of properties not subject to the lien; it likewise embraced the allowance of reasonable attorney's fees, or those charged, allowed and incorporated as part of the debt secured by the lands mortgaged, and of accounting as to the wife's lands and proceeds therefrom, of the amounts due on the mortgages, and that bid on foreclosure of both instruments, the disposition of the difference between the debt due and

reasonable expenses of foreclosure, and that amount bid at the foreclosure sales. ·

 The rules governing accounting and a bill therefor declare that technical accuracy in all details is not required in the statement of that pleading and in the assertion of the right thereto as recognized under circumstances covered by the decisions. Boriss Const. Co. v. Deasey, 212 Ala. 528, 103 So. 470; Cleveland Storage Co. v. Guardian Trust Co., 222 Ala. 210, 131 So. 634. It is further declared that an accounting is "always ordered where it is incidental to some other relief." Such, for example, where the mortgagee seeks foreclosure, or the mortgagor coming in to redeem is entitled to the right of accounting to ascertain the amount of the indebtedness. Tecumseh Iron Co. v. Camp, 93 Ala. 572, 9 So. 343; Kelly v. Wollner, 201 Ala. 445, 78 So. 823; Moore v. Berryman et al., 224 Ala. 555, 141 So. 192. The essentials of a bill for accounting may be generally stated, as that where the remedy at law is inadequate, the account is mutual and complicated; or the defendant is guilty of fraud or wrongdoing; or where discovery is needed; or where such accounting is incidental to some other relief. Julian v. Woolbert, 202 Ala. 530, 532, 81 So. 32; Grand Bay Land Co. v. Simpson, 205 Ala. 347, 87 So. 186; Phillips v. Sipsey Coal Mining Co., 218 Ala. 296, 118 So. 513; Cleveland Storage Co. v. Guardian Trust Co., supra; First Nat. Bank of La Pine v. Bradley, 223 Ala. 22, 134 So. 621; Farmers' National Bank of Geneva v. McKinnon, 223 Ala. 698, 134 So. 919; Acuff v. Rice, 224 Ala. 54, 139 So. 91; United States Fidelity & Guaranty Co. v. First Nat. Bank of Lincoln, 224 Ala. 375, 140 So. 755; Moore v. Berryman et al., supra.

In Phillips v. Sipsey Coal Mining Co., supra, the holding was that the filing of such a bill implied unadjusted or controverted items on both sides; that the balance was uncertain; that the true amount and to which of the parties it was due must be ascertained by the court; and implied an offer on the part of the complainant to pay any balance that might be found due the defendant, without the necessity for specific averment of such offer.

In this bill there is the complete and specific averment of such offer to pay, and submission to the jurisdiction of the court to ascertain the amount due, and the offer to obey the mandate of the court, as declared just and equitable in the premises.

 We have noted that courts of equity have entertained jurisdiction for accounting where the accounts are on one side, are complicated and difficult, and extend to many transactions and over a long period of time; and where the balance of the amount is uncertain, the remedy being in the nature of discovery, where the parties in interest are all before the court, to the end that justice be done. Terrell et al. v. Southern Railway Company, 164 Ala. 423, 438, 51 So. 254, 20 Ann. Cas. 901; Phillips v. Sipsey Coal Mining Co., supra; City of Mobile v. McCown Oil Co., 226 Ala. 688, 148 So. 402.

The general rule of the cases is that, where the nature and amount of a lien or pledge are so involved in uncertainty, a resort to a court of equity to ascertain and adjust the amount is indispensable for the purpose of justice in the case or matter; such is the basis of the owner's maintenance of a bill by accounting against the lienholder or pledgee, by the owner of the property. Crowson v. Cody, 207 Ala. 476, 93 So. 420; Monroe County Bank v. Smith, 223 Ala. 53, 134 So. 797; American-Traders' Nat. Bank et al. v. Henderson, 222 Ala. 426, 133 So. 36; Ezzell v. First Nat. Bank, 218 Ala. 462, 119 So. 2; Merchants' & Farmers' Bank v. Rainer, 213 Ala. 530, 105 So. 906; Crowson v. Cody, 209 Ala. 674, 96 So. 875; Hicks v. Dowdy, 202 Ala. 535, 81 So. 37; Adams v. Adams, 199 Ala. 46, 73 So. 984; Harris v. Jones, 188 Ala. 633, 65 So. 956; Keeble v. Jones, 187 Ala. 207, 65 So. 384; Nelson et al., Ex'rs, v. Owen, 113 Ala. 372, 21 So. 75.

In the instant case, the whole title to the mortgaged property is brought before the court, that equity may be done in a binding decree, that primary and secondary equities, if any, be declared. Merritt v. Alabama Pyrites Co., 145 Ala. 252, 40 So. 1028; Hodge v. Joy, 207 Ala. 198, 92 So. 171; West v. Holman, 223 Ala. 114, 134 So. 667; Bullen v. Trulove et al., 224 Ala. 677, 141 So. 671.

 When a bill is filed to enforce the equitable right of redemption, and the amount due is disputed, an averment of a prior tender is not necessary (Hunter-Benn & Co. Company v. Bassett Lumber Co., 224 Ala. 215, 139 So. 348); the requirement being only the offer to pay all sums found due on the accounting (Murphree v. Summerlin, 114 Ala. 54, 21 So. 470; Kinney v. Pollak, 223 Ala. 654, 657, 137 So. 669). A due submission to the jurisdiction of the court in this behalf and offer to do equity in the premises are averred.

 In such a bill against a mortgagee, where the complainant is on accounting entitled to the main relief prayed, the court has the right to adjust individual equities or rights that grow out of, and which are inseparably connected to or with, the subject-matter of the bill, and those to which common relief is sought to be granted and concluded by the decree. Section 6645, Code; Zadek et al. v. Burnett, 176 Ala. 80, 57 So. 447; Hodge v. Joy, 207 Ala. 198, 207, 92 So. 171; Long v. Monroe County Bank (Ala. Sup.) 145 So. 471;[1] Sims Ch. Pr. p. 74, § 123; 1

[1] 226 Ala. 26.

490

Daniell's Ch. Pl. & Pr. 241; 1 Pom. Eq. Jur. (4th Ed.) § 114; Story's Eq. Pl. (10th Ed.) p. 75, §§ 72, 136; p. 148, § 139; p. 154, § 148.

We are of opinion that the bill by the wife and husband was not multifarious; that there was a community of interest in the subject-matter within the rule. Ford v. Borders et al., 200 Ala. 70, 75 So. 398; McClellan v. McClellan, 203 Ala. 514, 84 So. 750.

To a consideration of complainant's (Lola Dewberry's) right, it will be observed that it is decided that, where a married woman makes an attack upon a conveyance, on the ground that it is a transaction wherein she was the security for the husband's debt, she has the burden of proof of the fact of sureytship. Bushard v. McCay, 201 Ala. 173, 77 So. 699; Lester v. Jacobs, 212 Ala. 614, 103 So. 682; Van Derslice v. Merchants' Bank, 213 Ala. 237, 104 So. 663. In dealing with such transactions, courts look through the form to the substance. Smith v. D. Rothschild & Co. et al., 212 Ala. 276, 102 So. 206; Staples v. City Bank & Trust Co., 194 Ala. 687, 689, 70 So. 115; Bell v. Farmers' Nat. Bank of Opelika, 214 Ala. 211, 106 So. 851; Street v. Alexander City Bank, 203 Ala. 97, 82 So. 111; Rollings v. Gunter, 211 Ala. 671, 101 So. 446; Lester v. Jacobs, supra; Elba Bank & Trust Co. v. Blue, 203 Ala. 524, 84 So. 748; Vinegar Bend Lumber Co. v. Leftwich, 197 Ala. 352, 72 So. 538; Morriss v. O'Connor, 206 Ala. 542, 90 So. 304; Alabama Chemical Co. v. Hall, 212 Ala. 8, 101 So. 456; Leath v. Hancock, 210 Ala. 374, 98 So. 274; Little v. People's Bank of Mobile, 209 Ala. 620, 96 So. 763.

The equity of this bill, without question, is presented within the rules that obtain as to such pleading. Monroe County Bank v. Smith, 223 Ala. 53, 134 So. 797, by the mortgagor; Merchants' & Farmers' Bank v. Rainer, 213 Ala. 530, 105 So. 906; Davis v. Ebensburg Trust Co., 304 Pa. 260, 155 A. 433, 79 A. L. R. 195, notes of Alabama cases page 201.

We have examined the voluminous record, and, looking through the form to the substance and final result, we are of opinion, and so hold, that the process as through the several parties, proceedings and documents, as with Baker, Dewberry, and the bank transactions, was, in effect, that of making and attempting to subject the wife's land (described in the mortgages and deeds) to the husband's debts. The route was circuitous and consecutive, through the several transactions, and, if allowed to stand, will deprive the wife of her property by way of a sureytship that is denied by the statute and our decisions. In her effort to cancel both mortgages, she has carried the burden of proof as to the fact of her sureytship and security of her husband's debts by her lands. Smith v. D. Rothschild & Co., 212 Ala. 276,

102 So. 206. And as to this land the wife is entitled to an accounting from or with the bank, the successors and the other respondents.

The right of novation and payment is stated, and the authorities are collected in Tuscaloosa Lumber Co. v. Tropical Paint & Oil Co., 211 Ala. 258, 100 So. 236. The rule of the application of payments is, that a debtor voluntarily paying moneys to his creditor has the right to direct the application of his moneys and properties, not subject to lien, to the payment of the debt he chooses, whether secured or unsecured. Whitt v. Leath, 213 Ala. 309, 104 So. 796; Redd Bros. v. Todd, 209 Ala. 56, 58, 95 So. 276; United States Fidelity & Guaranty Co. v. Simmons, 222 Ala. 669, 133 So. 731; Lynn v. Bean, 141 Ala. 236, 37 So. 515; Bell v. Bell, 174 Ala. 446, 56 So. 926, 37 L. R. A. (N. S.) 1203; Compton v. Collins, 197 Ala. 642, 647, 73 So. 334; Mayer Bros. v. Gewin, 200 Ala. 391, 392, 76 So. 307; Brown v. Scheuer, Wise & Co., 210 Ala. 47, 97 So. 50; McCurdy v. Middleton, 82 Ala. 131, 137, 2 So. 721; Aderholt v. Embry, 78 Ala. 185. In some cases the law makes the application, as to the principal, of payments of usury. Compton v. Collins, 190 Ala. 499, 503, 67 So. 395; McCormick v. Fallier, 223 Ala. 80, 134 So. 471; Torbert v. McFarland, 172 Ala. 117, 55 So. 311.

It is announced in Jones v. Meriwether, 203 Ala. 155, 82 So. 185, that usury cannot be set up to show payment or satisfaction of a mortgage debt by proceedings initiated subsequent to a regular and valid foreclosure, the statute not making usurious instruments void except only as to interest, and usury being available only as a personal defense. This construction of the usury statute was followed and applied in Alabama Cash Credit Corporation v. Bartlett, 225 Ala. 641, 144 So. 808, and recognized in McCormick v. Fallier, 223 Ala. 80, 134 So. 471; Davis v. Ashburn, 224 Ala. 572, 141 So. 226. If the mortgage was fully paid at the time of the attempted foreclosure, that action was void. Jones v. Meriwether, supra; Drum & Ezekiel et al. v. Bryan et al., 193 Ala. 395, 69 So. 483; Drum & Ezekiel v. Bryan, 145 Ala. 686, 40 So. 131. It is observed in Askew v. Sanders, 84 Ala. 356, 357, 4 So. 167, 168, that: "The payment of the debt terminates the relation of the parties as mere mortgagor and mortgagee, and removes the incumbrance of the mortgage as such, and the contingency for the exercise of the power cannot thereafter arise. Payment extinguishes the power, and the mortgage becomes the same as if no such power had been included in it. If the mortgagee sells the property after the debt has been satisfied, he thereby offends the equitable rights of the mortgagor, which a court of equity will intervene to protect, by its injunctive power if invoked before the sale, or by vacating it if already made. The

mortgagor, not having the legal title, had no adequate remedy at law."

And the provision of the statute is, the payment of the mortgage debt (meaning according to its terms), whether the mortgage is of real or personal property, divests the title passing by the mortgage. Section 9026, Code; Davis v. Ashburn, supra; Bellenger v. Whitt, 208 Ala. 655, 95 So. 10. We feel impelled to declare (though the writer's view was stated to the contrary in Jones v. Meriwether, 203 Ala. 155, 157, 82 So. 185) that under the rule announced in Jones v. Meriwether, supra, the question of usury would be eliminated (as affecting G. W. Dewberry) if there was a regular foreclosure under the powers contained in the mortgage, although the mortgagee was the purchaser and the rights of an innocent third party had not intervened (Davis v. Ashburn, 224 Ala. 572, 141 So. 226; Hoots v. Williams, 116 Ala. 372, 22 So. 497).

■ There is conflict in the evidence as to the fact and time of and demand for possession, made through an agent of the mortgagee-purchaser, upon G. W. Dewberry, one of the complainants. The fact that the crop was planted and well under way on a part of G. W. Dewberry's land, at the time of the sale, and that a "tenant at will" is entitled to his emblements under the provisions of section 8798 of the Code, did not relieve the complainant, G. W. Dewberry, of the duty to deliver possession (Connecticut General Life Ins. Co. v. Weldon [D. C.] 246 F. 265) on due demand. Failing in this, it affected the right of redemption as to G. W. Dewberry (Federal Land Bank of New Orleans v. Wilson, 224 Ala. 491, 141 So. 539; Buchmann v. Callahan, 222 Ala. 240, 131 So. 799; Jordan v. Sumners, 222 Ala. 314, 132 So. 427; Lamar v. Johnson, 16 Ala. App. 648, 81 So. 140) under the statute (section 10140, Code), after a strict foreclosure (Hamm v. Butler, 215 Ala. 572, 112 So. 141).

■ Redemption operates on the legal title and against the holder thereof; and must be of the entire tract en masse (Lord v. Blue, 200 Ala. 521, 76 So. 463), and not by piecemeal, as the act of redemption is an "indivisible entity" (Hargett v. Franklin County, 212 Ala. 423, 103 So. 40; Hobson v. Robertson, 224 Ala. 49, 138 So. 548; Snow v. Montesano Land Co., 206 Ala. 310, 89 So. 719; Cowley v. Shields, 180 Ala. 48, 60 So. 267; Morrison v. Formby, 191 Ala. 104, 67 So. 668; Slaughter v. Webb, 205 Ala. 334, 87 So. 854; Francis v. White, 166 Ala. 409, 52 So. 349). What of the wife's rights of redemption where the mortgage embraced the homestead and other tracts and the foreclosure and purchase was by the mortgagee purchasing at his own sale of all the lands sold en masse? The right of the wife to redeem was given for the first time by the statute, section 5746, Code of 1907. Thomas v. Blair, 208 Ala. 48, 93 So. 704; Johnson v.

Williams, 212 Ala. 319, 102 So. 527 (a homestead); Stringer v. Kelly, 212 Ala. 565, 103 So. 650. The case of Stringer v. Kelly, supra, held the wife may redeem her homestead where the husband has failed to deliver the premises within ten days, upon due demand in writing by the purchaser. Hamm v. Butler, 215 Ala. 572, 112 So. 141; McDuffie v. Faulk, 214 Ala. 221, 223, 107 So. 61, construing section 5746, Code of 1907, section 10140, Code of 1923. In the cases of McDuffie v. Faulk, supra, Faulk v. McDuffie, 215 Ala. 584, 112 So. 229 (not a homestead) and Hamm v. Butler, supra (dower) the authorities are collected to the effect that the wife's right of statutory redemption from the husband's mortgage is not affected by the question of his acts as to possession, or the surrender thereof on due demand to the purchaser at mortgage sale—not subject to the forfeiture provided by statute. Thomas v. Blair, 208 Ala. 48, 93 So. 704; Johnson v. Williams, 212 Ala. 319, 102 So. 527; Tallassee Oil & Fertilizer Co. v. Royal, 209 Ala. 439, 96 So. 620. That is to say, these decisions are to the effect that section 10143 of the Code and its forfeiture applies only to the persons in possession, and the rights of other parties to redeem cannot be affected by the failure of the holder of that possession to surrender to written demand duly made.

■ The question recurs, Was there a *regular foreclosure under these terms of the mortgages*, as affecting the right of G. W. Dewberry to redeem and to set up usury? The same terms contained in both of the mortgages, among others, are: "* * * But if by that time we fail to pay the bond hereby secured then we hereby authorize and empower the said Bank of Standing Rock, its agent, attorney or assignee *to take possession of said property*, and after giving ten days notice of the time, place, terms of sale and description of the property by posting written notice at the Court House door, in said county to sell the same to the highest bidder for cash at the Court House door of said county," etc. (Italics supplied.)

Such was the contract power made as a part of the security contained in the mortgage of September 25, 1924, for $726.06, and that of the mortgage for $3,539.04 of date of February 20, 1924. The evidence is without conflict that the mortgagees did not "take possession of said property" before attempting to advertise by posting for ten days, the written notice required, "at the Court House door in said county" at La Fayette.

It is generally stated that a sale under the power in a mortgage or trust deed is presumed regular and valid, unless there are facts to the contrary. Hunter-Benn & Co. Company v. Bassett Lumber Co., 224 Ala. 215, 139 So. 348; Kelly v. Carmichael, 217 Ala. 534, 117 So. 67, 70; 19 R. C. L. p. 614, § 431.

In Kelly v. Carmichael, supra, the donee of the power of sale in the mortgage "complied with an interest" is declared to be "quickened with an element of trust," and "charged as a quasi trustee with the duty of fairness and good faith in" execution of the power. Bank of New Brockton v. Dunnavant, 204 Ala. 636, 87 So. 105; Harmon v. Dothan Nat. Bank, 186 Ala. 360, 64 So. 621; Dozier v. Farrior, 187 Ala. 181, 65 So. 364; sections 9016–9018, Code.

The statutes, as applied to these mortgages which were executed after the date named in the statute, provide that: "After September 29, 1923, all sales of real estate, under powers of sale contained in mortgages * * * shall be held in the county where all or part of said real estate is situated"; that "notice of said sale shall be given in the manner provided in such mortgage or deed of trust * * * in the county where the mortgagor resides and the land, or a part thereof is located"; and that sales contrary to "powers contained in mortgages or deeds of trust * * * shall be null and void, notwithstanding any agreement or stipulation to the contrary." Sections 9016, 9017, 9018, Code, Acts 1923, p. 658, § 1; Carroll v. Hanahan, 221 Ala. 553, 130 So. 197. That is, the statutes require that a sale under the power in a mortgage or trust deed must be conducted in strict compliance with the terms of the power. 41 C. J. p. 968, § 1415; Bank of New Brockton v. Dunnavant, supra; Wood v. Lake, 62 Ala. 489; 1 Devlin on Real Estate, p. 702, § 396, p. 712, § 403.

In conformity with the rule of strict adherence to the power conferred in a mortgage, it has been declared that a mortgagee, purchasing at his own sale without authority, arms the mortgagor with the right of disaffirmance and redemption against the mortgagee as a sort of trustee. Kelly v. Carmichael, 217 Ala. 534, 538, 117 So. 67; Canty v. Bixler, 185 Ala. 109, 64 So. 583; Williams v. Wilson, 205 Ala. 119, 121, 87 So. 549; Chenault v. Milan, 205 Ala. 310, 87 So. 537; Persons v. Russell, 212 Ala. 506, 103 So. 543. In Wood v. Lake, 62 Ala. 489, the requirement of notice as to the time and place of sale was a "prerequisite to the execution of the power." Kelley Realty Co. v. McDavid, 211 Ala. 575, 100 So. 872; Dinkins v. Latham, 202 Ala. 101, 79 So. 493; Speakman v. Vest, 166 Ala. 235, 240, 51 So. 980; Summerford v. Hammond, 187 Ala. 244, 65 So. 831; Robinson v. Cahalan, 91 Ala. 479, 8 So. 415, did not show whether sale was public or private, and the burden rested upon the purchaser to show compliance. In Randolph v. Bradford, 204 Ala. 378, 86 So. 39, it was held that a sale under the terms of a mortgage before maturity of the debt does not extinguish or foreclose equity of redemption. Bank of New Brockton v. Dunnavant, 204 Ala. 636, 87 So. 105, where the property was exposed for sale en masse, held not authorized by the broad power of sale of the separate tracts embraced in the mortgage; so in Kelly v. Carmichael, supra; Steed v. Carmichael, 223 Ala. 193, 134 So. 885. The foregoing decisions offer analogy of strict requirements of contract and statutory provisions. 41 C. J. p. 946, § 1381. Such are the general applications of the rule.

The more recent statutes adverted to (of September 29, 1923, sections 9017, 9018, Code) declare a legislative policy of strict construction of powers of sale contained in mortgages, in the circumstances recited in the act, should aid in the construction of powers of sale thereafter incorporated in such instruments.

The recent decision of Barksdale v. Strickland & Hazard, 220 Ala. 86, 124 So. 234, 236, correctly observes, of such power of sale, that it is "a matter of contract" of one of two kinds—"naked powers and powers coupled with interest"; that a trustee designated therein of the first class must personally execute the power in the absence of evidence "that the power could not be exercised by the trustee named or his refusal to act, the question of substitution does not arise," and the attempted exercise of the power by a beneficiary was "held abortive."

The instant case presents the attempt or exercise of the power by the mortgagee, "coupled with an (that) interest"; and the regularity or irregularity of these foreclosures is presented by a direct attack—by a bill in equity seeking discovery, accounting, and redemption; and not by an indirect attack, as was made in Jones v. Hagler, 95 Ala. 529, 10 So. 345, where a trustee exercised the naked power.

■ The posting of the required notice (without taking possession) is shown to have been made by the mortgagee, the sale made, purchase, and deed executed pursuant thereto. Had the mortgagors the contract notice for which they stipulated that would defeat complainant G. W. Dewberry in a direct attack for discovery, accounting, and redemption? This question is important in ascertaining the existence of the debt vel non; and that as affecting the right to purge the account of any usurious interest that may have been embraced in the notes and the mortgages securing the debt. It is the rule that, if there is no debt, there is no mortgage. Drum & Ezekiel v. Bryan, 193 Ala. 395, 69 So. 483; Id., 145 Ala. 686, 40 So. 131. The mortgagee purchased at his own sale, and a proper application of payments is important to the mortgagor, G. W. Dewberry.

■ The many Alabama cases are collected in 69 A. L. R. 1194, to the effect that the presence of personal property or chattels at the place of judicial execution or foreclosure sale are required to be physically present, and exposed to view to aid in their sale for a reasonable price or fair value; "otherwise the

sale is irregular," and may be so challenged by direct attack, etc. Chenault v. Milan, 205 Ala. 311, 87 So. 537; Bowdoin v. Bedsole, 199 Ala. 648, 75 So. 167; Brock v. Berry, Demoville & Co., 132 Ala. 95, 31 So. 517, 90 Am. St. Rep. 896; Foster v. Goree, 5 Ala. 424, attack by action of trover; Foster v. Mabe, 4 Ala. 402, 37 Am. Dec. 749. The decision in Bowdoin v. Bedsole, supra, concluded with the observation that some of the mortgaged property was reduced to possession before foreclosure, part of it retained by the mortgagor, and a part of an ungathered crop could not be reduced to possession and produced for inspection; sale held not void.

The decision of Jones v. Hagler, 95 Ala. 529, 536, 10 So. 345, was a statutory action in the nature of *ejectment*—an indirect or *collateral attack* upon the foreclosure of real and personal property sold by a trustee, under the power; the power authorized the trustee, on default of the grantor, "to take possession of said land and slaves, or so *much of them* as may be necessary for the purpose, and sell *them* at public auction, for cash," etc. (Italics supplied.) The holding was that, when a deed of trust authorizes the trustee to take possession and sell on default, but does not require that he shall enter before making a sale, he may sell without taking possession, and it is not necessary that his deed to the purchaser shall show that the trustee was in possession at the time of the sale. This case is cited on this point in Bowdoin v. Bedsole, 199 Ala. 650, 75 So. 167, and it rests on the text of 3 Jones on Mortgages, p. 817, § 2309, "that entry and possession are not generally considered a condition precedent to the power of sale." 41 C. J. p. 946, § 1381. The rule in Massachusetts and Mississippi is that an entry, or a demand for possession, is required as an important element of the notice required by the instrument and manner of the execution of the power. Vaughn v. Powell, 65 Miss. 401, 4 So. 257; Cranston v. Crane, 97 Mass. 459, 93 Am. Dec. 106; Foster v. City of Boston, 133 Mass. 143; Roarty v. Mitchell, 7 Gray (Mass.) 243.

 The wife's right of redemption under the statute, section 10140, Code, is provided to protect her inchoate right of dower in the mortgaged real property, where the husband has neglected, failed, or refused to protect such equity, by requiring an accounting to ascertain the balance due on the mortgage debt and the existence of any lawful charges which should be paid as an incident to redemption, where she accomplishes that effort by the offer to do equity. Lewis v. Hickman, 200 Ala. 672, 76 So. 46; Miller v. Graham, 196 Ala. 230, 72 So. 87. Such is one phase of the instant bill. Hamm v. Butler, 215 Ala. 572, 575, 112 So. 141; Deepwater Black Creek Coal Co. v. Long, 224 Ala. 64, 139 So. 236; Sanders v. Wallace, 114 Ala. 259, 21 So. 947; American Blower. Co. v. MacKenzie, 197 N. C. 152, 147 S. E. 829, 64 A. L. R. 1047.

 We cannot say from the mass of evidence that there was fraud in the procurement of complainants' execution of the mortgages. The parties were before the officer making the acknowledgments and certificates thereof; he explained what he meant by the equivocal worded note to complainants' attorney; stated that he took the acknowledgments and duly certified them before record, and that this was of the mortgages with the exhibits in question. The burden of proof in respect to the lack of jurisdiction, or that of fraud in procuring the execution, or that of fraud in adding after the signatures, the exhibits as charged, was upon the complainants, who failed in these respects.

 For the purpose of aiding in the statement of account by the register on reference, or by the court, the item of usury vel non as to G. W. Dewberry was concluded by the foreclosure under the power. Jones v. Meriwether, 203 Ala. 155, 82 So. 185. It is true, the right to plead usury is a personal right that may be waived or not insisted upon. 27 Alabama & Southern Digest, Usury, ⬤126. The ultimate question is the debt vel non before foreclosure.

[29, 30] What of the right of the wife seeking to redeem? It is a rule that, where there is no debt, or indemnity therefor (41 C. J. 454), or duty reduced to a money value, there is no mortgage, or the mortgage ceases to exist; and this may depend upon a proper application of payments. The wife, seeking redemption of the husband's lands to protect her inchoate right, of necessity, under the statute, slips into his shoes to redeem according to the terms of the husband's contract or instrument. Hamm v. Butler, supra; Taylor v. Taylor, 207 Ala. 217, 92 So. 109; McGough v. Sweetser, 97 Ala. 361, 12 So. 162, 19 L. R. A. 470. The notes secured by the husband's mortgage are executed by the husband and wife to secure his debt, and do not represent a part of the wife's debt, as we hold. In McCormick v. Fallier, 223 Ala. 80, 85, 134 So. 471, 475, we recently declared of the old statute (before the amendment, Gen. Acts 1931, p. 783), that contracts made in the borrowing of money, where usury is stipulated for, are void ab initio, as to interest; that is, "The conclusion is inescapable that the statute, by necessary implication, renders contracts made in borrowing money, where usurious interest is contracted for, void ab initio, as to the interest, and no legal liability to pay interest arises from the execution of such contract. To hold otherwise would be to disregard the positive mandate of the statute, 'Nor shall the borrower of money at a usurious rate of interest *ever in any case* in law or equity be required to pay more than the principal sum borrowed.' (Italics supplied.)"

In Compton v. Collins, 190 Ala. 499, 502, 503, 67 So. 395, 396, is the announcement: "In this state the usurer is forbidden interest, and the payments made by the debtor are credited upon the principal, both in actions at law and in suits in equity, and without regard to who is the actor in the proceedings. This penalty was imposed by the Legislature upon contracts tainted with usury, and it is, of course, the plain duty of the courts to inflict the penalty."

When not directed by the debtor, under these authorities, payments made are to be *credited upon the principal of the debt;* when this may be done, as to usury, it is the "plain duty of the courts to inflict the penalty" of the statute. Where the wife redeems, as well as in a case where the husband redeems, to the end of the ascertainment of the just and true amount of the mortgage debt, *usury may be pleaded,* when the husband may so plead. Her right of *redemption* is not to be defeated by the failure of the husband to deliver possession on due demand.

In the wife's effort to redeem, an accounting to ascertain if there is a debt secured by the mortgages, and the amount thereof, requires a proper application of payments by direction of the parties, or by operation of the statute. Section 8567, Code, as amended by Gen. Acts 1931, p. 783; Scheussler & Sons v. Heard, 202 Ala. 648, 81 So. 590.

The former counsel of complainants was charged in the testimony by one of the complainants with losing, misplacing, or failing to return to complainant G. W. Dewberry a credit memorandum or receipt. This testimony released the other party from the rule of privileged communication, and gave him the right and duty to testify in the case in which the charge was made. This he was properly permitted to do.

We have indicated that the judgment be reversed for a discovery and accounting, necessary to a redemption by the wife of the husband's lands; that the accounts are very complicated and difficult of ascertainment of the just and true amount due; that there be a statement of the account in the respects indicated, as affecting the husband's real property and its redemption by the wife; and that the mortgages be canceled, as sought by the wife, so far as they embrace her lands.

The judgment of the circuit court is therefore reversed, and the cause remanded at the cost of the appellees.

Reversed and remanded.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.

On Rehearing.

. THOMAS, Justice.

The court did not discuss the effect of section 10144 of the Code on the right of the wife seeking to redeem the husband's lands to protect her inchoate rights under a statutory redemption. Sections 10140, 10143, Code; Thomas v. Blair, 208 Ala. 48, 93 So. 704.

In Johnson v. Davis, 180 Ala. 143, 146, 60 So. 799, 800, is the expression, "that, *in order to redeem under the statute,* the complainant must make a tender or show a sufficient excuse for a failure to do so." (Italics supplied.) This was where a bill was filed by the trustee in bankruptcy to redeem land sold at mortgage foreclosure. And in Johnson v. Williams, 212 Ala. 319, 320, 102 So. 527, 528, is the observation that: "A resort to equity is only necessary when (1) the creditor or purchaser (a) refuses to accept the tender and to convey, or (b) declines to inform the debtor or redemptioner of the amount necessary to be tendered, when known to him and not to the debtor or redemptioner; or (2) it is impossible or impracticable for the debtor or redemptioner to conform to the requirements of the statute without the aid of a court of equity."

The circumstances held sufficient are illustrated by our cases as collected in Johnson v. Williams, supra, and Cummings v. Vann, 215 Ala. 488, 111 So. 229, where unlawful charges were included in response to the demand for a statement. Toney v. Chenault, 204 Ala. 329, 85 So. 742.

In the case of Fellows v. Burkett, 219 Ala. 601, 122 So. 808, the bill for redemption was by the widow to protect her interest in the husband's lands, and there was demand from defendants for a statement in writing of the amount necessary to redeem and illegal items and claims made; held to excuse tender. And in Faulk v. McDuffie, 215 Ala. 584, 586, 112 So. 229, 230, the wife made the demand for a statement and there was a failure or refusal to comply. The court said: "The wife made demand of Faulk for statement of all lawful charges necessary to payment and redemption without suit in equity, and there was failure or refusal to comply. The wife may therefore file her bill, without making tender, offering and averring her ability to pay the debt and all lawful charges. Slaughter v. Webb, 205 Ala. 334, 87 So. 854; Gay v. Taylor, 214 Ala. 659, 108 So. 853. A waiver or forfeiture or estoppel of the right of redemption by the mortgagor, without more, does not bind the wife who in good faith asserts her statutory right."

We should have observed on the original hearing that we are shown no case declaring the right to redeem under the statute by a wife where she has made no effort to comply with the provisions of section 10144, Code, as it is made to apply to any one desiring and entitled to redeem. Gen. Acts of 1911, p. 391, § 1.

The bill as originally filed and as amended made no allegation of compliance and alleges no excuse for the failure. It was, no,

doubt, the intention of the pleader *that the allegation that the mortgage debt was paid in full before foreclosure* was sufficient to excuse the failure to demand statement or make tender.

In the original opinion the subject of the bill filed to enforce the equitable right of redemption was "and the amount is disputed," and an averment of a prior tender is not necessary, where there is submission to the jurisdiction of the court, an offer to do equity in the premises, and an offer to pay all sums found due on the accounting. This was not the saying that the rule of statutory redemption may not be observed or not complied with, without recognized just cause.

The appellees correctly observe that there has been no discussion of this phase of the question, and on rehearing invoke consideration and an expressed pronouncement thereon. This we should have done for a proper guidance to the parties at interest and for the lower court in proceeding to a final decree.

The mortgages embraced the lands of the husband and wife. Redemption may not be done by piecemeal, and must be effected of the entire tract, the subject of the foreclosure. The existence of a debt was denied by the husband and the wife, and under the averments of the bill as amended a discovery and an accounting alleged to be necessary to determine whether there was a judgment for indebtedness to the complainants or to the respondents. The complainant wife submitted herself to the jurisdiction of the court and offered to do equity in the premises as required by the final decree.

In Snow v. Montesano Land Co., 206 Ala. 311, 89 So. 719, the purchaser had conveyed the land in several parcels, and it was necessary to ascertain the several and separate amounts required to effectuate redemption; held as a sufficient excuse for redemption, the failure to make demand, payment, or tender. This case for the wife is within the rule that it was impossible or impracticable for the wife as redemptioner to conform to the requirements of the statute without the aid of a court of equity. Johnson v. Williams, 212 Ala. 319, 102 So. 527; Francis v. White, 160 Ala. 523, 49 So. 334.

We are still impressed that the wife's land was inserted in the $750 mortgage as a suretyship for the husband in his litigation with and settlement of his debt to Baker Bros. and settled through Hines or the bank. The land was conveyed to the wife in 1922; Baker sued G. W. Dewberry to judgment on September 5, 1923, execution issued thereon October 16, 1923, and the lands of Mrs. Lola Dewberry, the wife of G. W. Dewberry, were levied upon and sold February 24, 1924, and purchased by the Bakers, the plaintiffs in judgment. On the 26th day of July, 1924, these judgment creditors—purchasers—brought a suit in ejectment against G. W. Dewberry and Mrs. Lola Dewberry to recover the possession of Mrs. Dewberry's land (not the land of G. W. Dewberry), and judgment was rendered by agreement (of defendant husband in that suit with the Bakers) in favor of the plaintiff. It was recited therein that if within a few days (about 15 days) the defendants (one of whom was the wife) paid plaintiff $650 (on its debt against G. W. Dewberry, the husband) and one-half the costs, the title to the land would be vested in Mrs. Dewberry. She already had the legal title thereto; and, if Baker desired to challenge or set aside her old deed, this was not the procedure to that end. The testimony shows that the bank, at the instance of Dewberry, and with full knowledge of the facts, and to aid and support its mortgages for large amounts on these and other lands of the husband, gave credit to Baker Bros. for $650, and they executed, on September 24, 1924, a *quitclaim deed* to Mrs. Dewberry. There was no effort on the part of the Bakers to set aside Mrs. Dewberry's deed acquired in 1922.

Mr. Baker testified that he had known G. W. Dewberry 40 years, but did not know his wife—"would not say he had ever seen her"—that he bought cotton from G. W. Dewberry from 1919 to 1922; that he started and conducted a litigation with him in 1922 to 1924; settled same in court by a judgment for $1,200; that it was a "compromise settlement"; that the judgment was not against his wife (Lola Dewberry), but "was against him alone"; execution thereon was levied on "his wife's land or land that she claimed to own" of the 128 acres; that he and his wife claimed the land as that of the wife; that "the records of the court showed that it was her land; that he was paid on a compromise settlement $600 or $650, that Hines brought the money to plaintiffs or rather "a check or deposit slip" in part payment of the judgment; that he did not "accept it as a full settlement"; that it was settled in a way, but they were to take $600, "then if we could get any more we were to get it"; that they "never got any more"; that they "had judgment for $1,200.00. * * * we got about $650.00"; could not say whether the judgment was satisfied of record; that Hines and the attorneys down there "made settlement" or "worked it up"; that witness thought the $650 was to be "credited on the judgment." The witness was asked and answered as follows:

"Q. At that time you did not claim to have any judgment or any debt against Mr. Dewberry's wife whatever? Did you, Mr. Baker? A. No, sir.

"Q. And she did not owe Baker Brothers any money whatever? A. No, sir. We never had her name on the books.

"Q. And is it not a fact that this 128 acre tract was levied on because that you found

nothing against that land at the time? A. I couldn't say. I think we found it in his name at the time. * * *

"Q. And if the record shows it was satisfied in full you accepted the $650.00 as in full satisfaction of the judgment? Isn't that true? A. How that $650.00, whether that was accepted in full of the judgment I really don't know. I could not swear positively, but I don't think it was.

"Q. Which one of you—did you or your brother handle the matter. Which one of you? A. I did mostly. * * *

"Q. And whatever the record shows with reference to that settlement was authorized by you? Isn't that true? A. I suppose so."

The witness then testified on redirect examination:

"Q. Mr. Baker, you first brought a suit against Mr. Dewberry on an account he owed Baker Brothers, did you not? A. Yes, sir.

"Q. And got a judgment? A. Yes, sir.

"Q. And after you got that judgment an execution was levied on this 128 acres of land? A. Yes, sir.

"Q. It was put up and sold, was it not? A. Yes, sir.

"Q. And Baker Brothers bought it in? A. Yes, sir.

"Q. Then didn't you bring another suit against Mr. Dewberry and Mrs. Dewberry for the recovery of the possession of this land? A. Yes, sir.

"Q. That is the suit was settled? A. Yes, sir.

"Q. Mrs. Dewberry was claiming to own that land? A. Yes, sir.

"Q. You had a deed to it? A. Yes, sir.

"Q. And you brought a suit in ejectment against both of them to recover it? A. Yes, sir.

"Q. And when it was settled you made a deed to Mrs. Dewberry. I will ask you to look at this paper that is marked Respondent's Exhibit 7, purporting to be a deed from J. H. Baker and others to Mrs. L. R. Dewberry, and I will ask you whether or not Baker Brothers and your wives signed that paper? A. We did.

"Q. That is the deed made at the time of this settlement that you are talking about is it? A. Yes, sir.

"Q. And on payment of the $650.00 to you? A. Yes, sir.

"Q. Then it was the ejectment suit that was settled? A. Yes, sir.

"Q. Instead of that old judgment on the account? A. Yes, sir. That is right.

"Q. And this is the deed you gave to Mrs. Dewberry when that second case, the ejectment suit was settled by the payment of $650.00 to you?' A. Yes, sir.

"Q. That is what you got for the land you had bought? A. Yes, sir.

"Q. And you made this deed? A. Yes, sir."

And on cross-examination:

"Q. The only basis of your claim to the land was the judgment that you recovered against Mr. Dewberry, was it not? A. Yes, sir.

"Q. And not against Mrs. Dewberry? A. We didn't have any litigation, Mr. Smith, with Mrs. Dewberry at all until this land business came up, the second suit.

"Q. Now the settlement that was made was on the judgment that you recovered against Mr. Dewberry? Isn't that true? A. I think so.

"Q. You did not have any judgment against her to settle, did you? A. No, sir. We had no judgment against her. * * *

"Q. You had a suit pending against her at the time it was settled, didn't you? A. Yes, sir, on this land proposition.

"Q. And that is what was settled? A. Yes, sir. She claimed the land after we levied on it.

"Q. And you brought suit for the land? A. We sued for the possession of it. * * *

"Q. But if she did not owe you anything you didn't claim against her anything in the way of a judgment? A. No, sir. We were just suing for the possession of the land. She claimed the land after the Court gave us title to it.

"Q. But the settlement was made in court there on the judgment that you had recovered against G. W. Dewberry? Isn't that true? A. I suppose it was, yes, sir."

All parties at interest were fully informed of the facts and title to the respective land; the bank had large mortgages on both tracts of land to secure the husband's debts, and knew the facts as to his debt to Baker being thus paid or secured in part.

We have again examined the evidence and cannot escape the conclusion that G. W. Dewberry, Hines, the bank, and Baker were but litigating and contracting to the end that the wife's land be made a suretyship for the debt of the husband, covered by the claim of the bank and Baker, and that she did not so intend to do this, nor was she permitted so to do under the statute.

The opinion holds that G. W. Dewberry is not entitled to relief, and in that respect the holding of the lower court is correct. Much of the record dealt with the mortgages on real and personal property of said complainant, whether or not there was a regular foreclosure, demand for possession, etc.

█ This court is invested with the power to apportion costs as in its discretion are just and right. Manning v. Carter, 201 Ala. 218, 77 So. 744; Pitts v. Walker, 212 Ala. 645, 103

So. 850. And, after a reconsideration of the apportionment of costs, we are of opinion that the same should be divided between the respondents-appellees and G. W. Dewberry; and Mrs. Dewberry is not subject to taxation of costs.

With this extension and modification of the original opinion, the application for rehearing is denied.

Application denied.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.