# Lamkin *v.* Lovell.

*Bill by Married Woman to Cancel Note and Mortgage,
Because a Security for the
Husband's Debt.*

(Decided April 11, 1912. 58 South. 258.)

1. *Husband and Wife; Conveyance by Wife; Validity; Presumption.*—Where a married woman executes a mortgage reciting an individual indebtedness, the burden is on her to show its invalidity, in that it was given merely as surety for the debt of her husband.

2. *Same.*—The facts and circumstances considered, and it is held that the note and mortgage were collateral security for the husband's debt and were void under section 4497, Code 1907.

3. *Mortgages; Law Governing; Property in Other States.*—Where the parties reside in Alabama, and the note was executed and made payable in Alabama, and the mortgage to secure the note is executed in Alabama, but conveys lands situated in Mississippi, the note and mortgage are governed by the laws of Alabama.

4. *Equity; Jurisdiction; Cancellation of Instrument.*—Where a court of equity in Alabama acquires jurisdiction of the parties, it has jurisdiction to cancel mortgage executed in Alabama, on lands situated in Mississippi, the decree of cancellation operating in per sonam only.

5. *Judgment; Full Faith and Credit.*—Where a Court in Alabama acquires full jurisdiction of the parties and subject matter, a decree which cancels a mortgage executed in Alabama on lands situated in Mississippi must be deemed conclusive on the rights of the parties in a suit in Mississippi to foreclose the mortgage, thereby giving full faith and credit to the decree.

(Simpson and McClellan, JJ., dissent.)

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by Irene W. Lamkin against W. S. Lovell as trustee, to cancel note and mortgage because given to secure debt of the husband. From a decree for respondent complainant appeals. Reversed and remanded.

KYLE & HUTSON, and GASTON & PETTUS, for appellant. Under the facts in this case the note and mort-

[Lamkin v. Lovell.]

gage were void, as in any event, they were given as collateral security for the debt of the husband, and rendered the wife at least indirectly responsible for the husband's debt.—Sec. 4497, Code 1907; *Evans v. Faircloth,* 165 Ala. 176; *Henderson v. Brunson,* 141 Ala. 674; *Continental Bank v. Clark,* 138 Ala. 292; *Osborn v. Cooper,* 113 Ala. 405; 21 Cyc. 1462, and authorities cited under the Code section. As it was necessary to resort to evidence aliunde to establish the invalidity of the note and mortgage, a resort to equity may be had to remove the cloud.—*Richardson v. Stevens,* 122 Ala. 307. Complainant is not estopped to urge its invalidity, nor required to repay the mortgage debt in order to have cancellation.—*Richardson v. Stevens, supra; Landsden v. Bone,* 90 Ala. 446. If the mortgage is void under the statute complainant could not ratify it.—*Gafford v. Speaker,* 125 Ala. 506. The fact that the mortgage recites that it is her debt, will not estop her from showing that it is not her debt.—*Pulliam v. Hicks,* 132 Ala. 134; 27 S. E. 475. That the wife was a mere surety of the husband in this transaction, see 21 Cyc. 1465; 24 A. & E. Enc. of Law, 720; 6 Enc of Evid. 822; 71 N E.. 145; 20 N. J. L. 101. Under the evidence, the agent and the principal had notice of the fact that Mrs. Lamkin was simply acknowledging that she owed a debt which she did not owe.—*Continental Bank v. Clarke, supra; Horton v. Hill,* 117 Ala. 625; *Heard v. Hicks,* 82 Ala. 484. It is no defense that the land is situated in Mississippi, because the parties reside in Alabama, the debt was an Alabama debt, the note and mortgage were payable in Alabama, and the court had jurisdiction.—9 Cyc. 669; 21 Cyc. 1320, et seq.; *U. S. S. & Co. v. Becker,* 137 Ala. 120; *McGarry v. Nicklin,* 110 Ala. 564; *Falls v. U. S. B. & L. Assn.,* 97 Ala. 417. This precise question has been decided by this court.—

*Cubbege v. Napier,* 62 Ala. 518; *Moore v. Davidson,* 18 Ala. 209; *Caldwell v. Edwards,* 5 S. & P. 326; 40 Am. St. Rep. 666; 57 Am. St. Rep. 452; 66 Fed. 653. The validity and construction of a contract is to be determined by the law of the place where made.—Authorities supra, and *Evans v. Pittrell,* 33 Ala. 449; *Willard v. Wood,* 135 U. S. 313; *Andrews v. Pond,* 13 Pet. 65; 2 Fed. 417. This court has the power to compel cancellation of mortgage as a cloud on complainant's title, notwithstanding the land is located in Mississippi.—22 A. & E. Enc. P. & P. 776, 780; *Mobile L. I. Co. v. Pruett,* 74 Ala. 487; 18 Am. Rep. 722. The proceeding is one in personam.—110 U. S. 151; 35 Fed. 86; 27 Fed. 339; hence, if the court has jurisdiction of the parties, it may decree the removal of the cloud on lands situated in other states.—17 Enc. P. & P. 295, 35 Fed. 86; 215 U. S. 1; 69 L. R. A. 673; 51 South. 654. Counsel discuss the gambling feature of the contract with citation of authority, but it is not deemed necessary to here set it out.

PERCY, BENNERS & BURR, and WILLIAM H. COOK, for appellee. The case does not fall within the prohibition of section 4497, because it is not a case of suretyship. —*State v. Parker,* 72 Ala. 181; *Mobile, etc. Ry. Co. v. Nicholas,* 92 Ala. 126; 32 Cyc. 14. A wife may convey her separate estate in payment of her husband's debt. —*Mohr v. Griffin,* 137 Ala. 456; *Pratt L. & I. Co. v. McKay,* 135 Ala. 452; *Hubbard v. Sayre,* 105 Ala. 440; *Holt v. Agney,* 67 Ala. 360. She may give or dispose of her personal property or her separate estate to her husband or another, or apply it with her own hand, or through her husband, directly to the payment of his debt.—*Gibson v. Wallace,* 147 Ala. 322; *Samples v. Guyer,* 143 Ala. 613; *Bank of Gadsden v. Moragne,* 128

[Lamkin v. Lovell.]

Ala. 667; *Hollingsworth v. Hill,* 116 Ala. 184; *A. F. L. & M. Co. v. Thornton,* 108 Ala. 250. Full faith and credit will be given to the laws of another state when properly pleaded.—*Cubbege v. Napier,* 62 Ala. 513. The Mississippi law governs as the property was situated in that state.—*Nelson v. Goree,* 34 Ala. 565; *Castleman v. Jeffries,* 60 Ala. 380; *Danner v. Brewer,* 69 Ala. 202; Storey's Conflict of Laws, sec. 382. This doctrine is in accordance with the great weight of authority.—9 Cyc. 681, and cases cited in notes 71 and 72; *Mayer v. Roche,* 26 L. R. A. (N. S.) 764 and note; note to 57 L. R. A. p. 523. As to the law in Mississippi, see *Frierson v. Williams,* 57 Miss. 451. Counsel discuss the invalidity of the debt because of the gambling feature and cite authorities to support their contention that such was not the case, but it is not deemed necessary to here set them out.

SAYRE, J.—Irene W. Lamkin filed this bill against the trustee in bankruptcy of Knight, Yancey & Co., seeking to be relieved of the incubus of a note and mortgage, on the ground that they had been given to secure the debt of her husband. The instruments had been executed under the following circumstances: Complainant's husband, H. T. Lamkin, was employed by Knight, Yancey & Co., cotton brokers in Decatur, and with their consent had so used their credit in New York as to become indebted to them in the sum of $2,500 on account of losses suffered while dealing in "cotton futures." Knight, acting for Knight, Yancey & Co., desiring to have their loss secured, and Lamkin, on the other hand, desiring further credit with them to the extent of $1,000 as a means of further speculation, whereby he might recuperate his losses, between them contrived to secure both ends by fixing a mortgage lien for $3,500 on com-

22—176

plainant's property. So contriving, they procured Colonel Harris, who had no concern about their purposes, to lend complainant the sum desired on the security of her note of hand and the mortgage in question; the understanding being that Knight, Yancey & Co. would, soon as he desired, reimburse him and take an assignment of the note and mortgage without recourse. Accordingly, on the execution and delivery of the note and mortgage to Harris, complainant received his check for the amount thereby secured, which she immediately indorsed to Knight, Yancey & Co., and within a few days the note and mortgage were assigned to Knight, Yancey & Co., who gave Harris a check for $3,500. Harris has no interest, as the bill avers, and he is not made a party. Nor was it ever intended that he should have any real interest in the transaction. In making the temporary loan, he relied upon Knight's promise to take it off his hands without delay. We are not troubled to consider what rights Harris might have had for the enforcement of the mortgage, had complainant kept the check or collected and kept the money, and Knight, Yancey & Co. had thereupon refused to redeem the note and mortgage from Harris, The manifest intention was that the note and mortgage were to pass through him as a mere conduit, and so it did without a hitch. The transaction, then, must be measured for merit just as if Knight, Yancey & Co., aided and abetted by the influence and request of the husband, had procured the mortgage directly from complainant. Complainant might have borrowed money on the security of her property and devoted it to the payment of her husband's debt in part, and in other part lent or given it to her husband to dispose of at his pleasure. And, having made a mortgage reciting her individual indebtedness, the presumption is that it speaks the

truth; and the burden is upon her to prove that it was in fact given merely as surety for her husband.—*Sample v. Guyer*, 143 Ala. 613, 42 South. 106. But where, as here, it is entirely clear that the transaction is different from what it purports to be, where the parties move circuitously to the end in view, as if to evade the statute, and where the true intent and meaning of what the wife does is to give her obligation, payable in the future and secured by a mortgage, to the husband's creditor—all facts established in this case beyond peradventure— the necessary effect is to constitute the wife's note and mortgage a collateral security for the husband's debt. The language of the statute is that "the wife shall not, directly or indirectly, become the surety for the husband."—Code, § 4497. Equity's invariable process is to look through form to substance. No superficial appearance will be permitted to lead the court away from the true inwardness of the case. When this transaction is so considered, it must be condemned as an evasion of the statute, or the statute itself must be nullified. In *Third National Bank v. Tierney*, 128 Ky. 836, 110 S. W. 293, 33 Ky. Law Rep. 418, 18 L. R. A. (N. S.) 81, the wife gave a note in payment of her husband's debt. It was argued that, under a statute similar to ours, a married woman had the right to borrow money by discounting her own note, and might do as she pleased with the proceeds. The court said: "If the argument made by counsel for appellant were sound, then the creditor of the insolvent husband could secure his debt by taking in its place the obligation of the wife, and thereby bind her estate, although, if the husband executed, with his wife as surety, his obligation to pay the debt or demand, she would not be liable thereon. When the creditor of the husband takes in satisfaction of his debt the obligation of the wife, the wife is in effect be-

coming the surety of the husband; and the creditor accepts her note with the intention of looking to her for its payment. The fact that it is the creditor of the husband that advances the money to the wife to pay him her husband's debt, or that he accepts the obligation of the wife in discharge of the debt of her husband, or takes her as surety for her husband to better secure a loan made to him, is the essential thing that places his relation to the transaction in a different attitude from that of the person who, as an original business proposition, lends the wife money to do with as she pleases, and who derives no benefit or advantage, except such as grows out of the interest or profit he may secure from the loan of the money. When the wife executes her note to take up the debt of her husband, or borrows from the creditor of the husband on her own obligation the money and hands it to him, to pay her husband's debt, she is, in the meaning of the statute, assuming the debt of another, the same as if her name was signed as surety to a writing promising to pay the debt. The form of the transaction will not be allowed to defeat the statute, when the substance is an evident attempt to evade it. This rule will not impair or interfere with the power of a married woman to borrow money or contract indebtedness in the ordinary course of business, or charge the person from whom she obtains it with notice of the use to which it is put, unless he be the husband's creditor, and the money is borrowed from him to pay the husband's debt." Our conclusion is that, on consideration of the statute and the undisputed facts, the note and mortgage should be canceled.

But the land covered by the mortgage in question lies in Mississippi; and the appellee contends that under the law of that state, which there has been an effort to prove, this mortgage would be foreclosed by the courts

there, and that this court should recognize the law of that state. The law of Mississippi in respect of contracts of suretyship by married women may be different from the law of this state; but on the proof it is not at all clear that such is the fact, and we have pretermitted the inquiry as of no consequence in the view we take of the case. We may concede that if this were a Mississippi contract, so for convenience to speak of the transaction in question, it might be enforced and the mortgage foreclosed in the courts of that state. But the parties lived and were at the time in this state, and the note was made payable at a designated place in this state. There can be no doubt that the validity and effect of the transaction are to be determined under the law of this state, whether drawn into question here or in Mississippi. "In entering into contracts, if nothing appear to the contrary, the law of the place silently becomes a part of the contract, and determines the measure of right it secures."—*Falls v. U. S. Savings Ass'n,* 97 Ala. 417, 13 South. 25 L. R. A. 174, 38 Am. St. Rep. 194; *Cubbedge v. Napier,* 62 Ala. 518. We may assume, therefore, that on proof there of the law of this state as we have interpreted it the courts of Mississippi would interfere to prevent a foreclosure of the mortgage in that state. The court here is not asked to adjudicate the title, nor to make a decree disturbing the possession, but to deal with the contract between the parties and the evidences of it. True the ultimate object, in part at least, of the remedy sought is the protection of complainant's land in Mississippi against the apparent title conveyed by the mortgage; but that object is to be accomplished indirectly. Mr. Pomeroy says that the remedy by cancellation does not, like a specific performance, or the execution of a trust, or an assignment of dower, or partition of land. operate directly and immediately

to establish the plaintiff's title, and to confer upon him the complete dominion over his estate—the ultimate relief which he seeks. It is "often used as the preparatory step which enables him to obtain, sometimes in the same action, and sometimes in a subsequent suit, the ultimate remedy which finally establishes his rights and obligations, or restores him to the full enjoyment of his estate. * * * The cancellation of a deed does not of itself directly establish the plaintiff's title and put him in possession of the land; but it enables him, if necessary, to assert his title and obtain the possession."—4 Pom. Eq. Jur. § 1375. This court has acquired jurisdiction of the persons of the defendant, and so of his will and conscience. By its decree, it can compel him to do what is just and equitable under the circumstances by requiring him to cancel the mortgage.—*Remer v. Mackay* (C. C.) 35 Fed. 86. Incidentally, and in order to dispose of the entire controversy, it will also grant the same relief as to the note. The decree is not a decree in rem, establishing a title in land, but operates in personam only, restraining the defendant from asserting his claim, and directing him to deliver up his note and mortgage to be canceled, or to execute a release to the plaintiff. —*Hart v. Sansom,* 110 U. S. 151, 3 Sup. Ct. 596, 28 L. Ed. 101. "So long as the relief sought may be worked out directly on the person of the defendant, and indirectly through his person on property in a foreign jurisdiction, it is immaterial what form the decree assumes." —*Allen v. Buchanan,* 97 Ala. 399, 11 South. 777, 38 Am. St. Rep. 187; *Guild v. Guild,* 16 Ala. 121. The law reserves, however, to the courts of Mississippi that jurisdiction which will be exercised in any strictly local suit for the foreclosure of the mortgage or the recovery of the land; for there the subject-matter will be specific property, and the remedy invoked must operate directly

[Minge v. Green.]

upon the res, and not upon the person.—4 Pom. Eq. Jur. (3d Ed.) §§ 1317, 1318. There, also, our decree, pleaded as a cause of action or ground of defense, will be regarded and taken as conclusive of all the rights and equities by it adjudicated and settled, and will thus be given faith, credit, and ultimate effect upon the property.—*Fall v. Eastin,* 215 U. S. 1, 30 Sup. Ct. 3, 54 L. Ed. 65, 23 L. R. A. (N. S.) 924, 17 Ann. Cas. 853. Hence its materiality and effect.

For the reasons stated, the decree will be reversed and remanded, in order that the court below may make a decree in accordance with our opinion, and may superintend its execution.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON, MAYFIELD, and SOMERVILLE, JJ., concur. SIMPSON and McCLELLAN, JJ., dissent.