153 So. 743

## GARLAND v. FIRST NAT. BANK OF SCOTTSBORO et al.

### 8 Div. 562.

Supreme Court of Alabama.

March 1, 1934.

Rehearing Denied April 12, 1934.

Proctor & Snodgrass, of Scottsboro, for appellant.

D. P. Wimberly, of Scottsboro, for appellees.

THOMAS, Justice.

The bill was to cancel a mortgage by the wife alleging that it was a forbidden suretyship for the husband's debts.

The principles of law involved in this case are not complicated and are well understood. The difficulty, if any, is in applying the facts as presented on the trial of the case to the law as established under the statute. Section 8272, Code 1923. It is an elementary principle that the wife shall not *directly* or *indirectly* become the surety for the husband, and in the construction of this principle of law, which is statutory, our court has said:

"The statute which declares that 'the wife shall not, directly or indirectly, become the surety for the husband' 'is founded upon public policy, which is to protect the wife's estate as against the influence of her husband or other person, or her own inclination, in respect to subjecting it to her husband's debts.' Section 8272, Code; Richardson v. Stephens, 122 Ala. 301, 307, 25 So. 39, 41.

" 'It has been liberally construed and zealously applied by the courts for the accomplishment of its obvious design,' and in dealing with transactions to which the statute is applicable, the courts look through the form to the substance of the transaction. Street v. Alexander City Bank, 203 Ala. 97, 98, 82 So. 111, 112; Horton v. Hill, Adm'r, 138 Ala. 625, 36 So. 465." Sims v. Hester et al., ante, p. 321, 153 So. 281.

And in Smith v. D. Rothschild & Co., 212 Ala. 276, 277, 102 So. 206, 208, it was observed:

"Equity's invariable process is to look through form to substance. No superficial appearance will be permitted to lead the court away from the truth of the transaction to avoid the statute if such be its effect and purpose. * * *

" 'If the debt sought to be enforced against the wife, or any part of it, was infected with this vice in its inception, the infection remains, regardless of renewals or changes of form. And so, with respect to the method by which the proceeds of the loan are returned to the hands of the lender, it is of no consequence whether the payment of the husband's debt is open and direct, or whether the money passes to the creditor through intermediates chosen for the purpose. The law looks to the intention and the result, and not to the means employed.' "

See, also, Dewberry v. Bank of Standing Rock (Ala. Sup.) 150 So. 463;[1] Alabama Farm Bureau Credit Corporation v. Helms (Ala. Sup.) 151 So. 589;[2] Mitchell v. Sessoms Grocery Co. (Ala. Sup.) 153 So. 282;[3] Vinegar

---

[1] 227 Ala. 484.     [2] 227 Ala. 636.     [3] Ante, p. 360.

Bend Lumber Co. v. Leftwich, 197 Ala. 352, 72 So. 538.

It is urged that to an understanding of the situation it is necessary to embrace earlier transactions, beginning with the years 1921 and 1922, when the complainant executed her note to the First National Bank for about $1,223, which the respondent J. N. Garland testifies was executed to reduce his indebtedness to that bank. It is admitted that the indebtedness of respondent Garland to the bank at that time was very large.

It is the contention of complainant that a large part of the indebtedness evidenced by the real estate mortgage of January 24, 1930, was that of a renewal of the balance due on the prior mortgage executed by the complainant to the bank in 1923. It is significant that at the time, and on the same day, that the indebtedness of Mrs. Garland of 1923 was placed on the day book of the respondent First National Bank, other methods were being used by that bank to reduce the indebtedness of J. N. Garland to the bank; that is, on that day the respondent First National Bank received from Mack Garland, a son of the respondent J. N. Garland and the complainant, a note for $4,000 to reduce the indebtedness of J. N. Garland to the bank.

In the testimony of Mr. J. W. Gay, witness for and cashier of the respondent bank, is the admission that the note of Mack Garland was taken by the bank to reduce the indebtedness of J. N. Garland to the bank. The letter of Mr. J. W. Gay, as cashier of the respondent First National Bank, to Mr. Garland, of date of October 17, 1921, referred to "the notes of Mrs. Lucy Garland" for $2,776, as being "your indebtedness to The First National Bank"—the indebtedness of J. N. Garland. It is the contention of the complainant that in the renewals of this indebtedness, a part of the same was carried forward into the mortgage of 1930 by the wife, which is here sought to be canceled.

The court in its final decree found that: "Prior to the 24th day of January, 1930, a settlement of all the dealings between the complainant and the First National Bank of Scottsboro had been made." This conclusion is not borne out by the testimony of the complainant, that of the respondent J. N. Garland, or the tendencies of evidence in the testimony of J. W. Murphree and J. R. Rudder. We have examined the record, and are of opinion that the matter should be referred to the register for an accounting to ascertain the full facts and dealings of the parties under the statute invoked and as eventuated in the mortgage of 1930. Dewberry v. Bank of Standing Rock, supra.

It is true, as stated by counsel, that the application of the facts to the statute (section 8272, Code) has developed two well-established lines of decisions: That indicated by the decisions above cited, and that where the wife is acting, not in the capacity of suretyship, but in her own independent right and behalf. Hall v. Gordon, 189 Ala. 301, 66 So. 493; Bushard v. McCay, 201 Ala. 173, 77 So. 699; Hayden v. Smith, 216 Ala. 428, 113 So. 293; Hendon v. Hendon, 219 Ala. 159, 121 So. 534; McDaniel v. Mellen, 223 Ala. 181, 183, 134 So. 873; Bell v. Henderson Nat. Bank, 225 Ala. 398, 143 So. 568; Van Derslice v. Merchants' Bank, 213 Ala. 237, 104 So. 663; Alabama Farm Bureau Credit Corporation v. Helms, supra; Mitchell v. Sessoms Grocery Co., supra; Kelly v. Hanwick ante, p. 336, 153 So. 269.

While agreeing with the specific and aggregate deductions made from the mortgage by the court in the first decree rendered, we are of the opinion the whole acts between the parties from 1921–1923 should be restated; that no attorney's fee be allowed under the terms of the mortgage. Perry v. Seals, 186 Ala. 514, 65 So. 151; Fellows v. Burkett, 219 Ala. 601, 603, 122 So. 808; Union Bank & Trust Co. v. Royall, 226 Ala. 671, 673, 148 So. 399.

In the mortgage of January 24, 1930, are specific provisions which are likewise contained in the mortgage of January 1, 1923, and which read in part as follows:

"And as further security, the said Lucy R. Garland agrees to take out and assign as collateral security Standard Life Insurance policy in the sum of Two Thousand Dollars. And the said J. N. Garland does further assign as collateral security Policy No. 721,-176 in the Mutual Benefit Life Insurance Company for $2000.00.

"It is expressly stipulated that the rents on the tract of lands first above described are specifically assigned, mortgaged and pledged as security for said indebtedness from year to year and the rents for each year are mortgaged to secure the note falling due in the year in which it matures, with the right to take possession and collect the same and apply the proceeds, less expenses on the said indebtedness.

"Upon default in payment of either of said notes at maturity, or the annual interest on the entire indebtedness, or on failure to pay the premiums on said Life Insurance Policies and keep the same alive, in any of

said events all said indebtedness shall become due and payable."

The provisions for acceleration of the due date of the mortgage on default, or "failure to pay the *premiums on said life insurance policies and keep the same alive*," speak of the intention of the parties: (1) As to the indebtedness and suretyship vel non; (2) as to the nature or extent of the security; and (3) as to the right to declare acceleration or default. We are of opinion the premium of $175.34 paid by the bank on the insurance on complainant's life (making good the contract of the mortgage) for collateral was properly charged against her, *provided, any portion of the mortgage be held valid and binding and not by way of suretyship for the husband's debt.* If it was for the husband's debt, the premium paid by the bank was for its own benefit and subject to the law against suretyship of the wife.

Reversed and remanded.

