154 So. 903

## CONTINENTAL LIFE INS. CO. OF ST. LOUIS, MO., v. BRANDT.

### 6 Div. 506.

Supreme Court of Alabama.

May 17, 1934.

Frank E. Spain, Carl G. Moebes, and Coleman, Spain, Stewart & Davies, all of Birmingham, for appellee.

London, Yancey, Smith & Windham and J. K. Jackson, all of Birmingham, for appellant.

THOMAS, Justice.

The question presented by this appeal is the suretyship vel non of the wife for the debts of the husband.

The statute declares: "The husband and wife may contract with each other, but all contracts into which they enter are subject to the rules of law as to contracts by and between persons standing in confidential relations; but the wife shall not, directly or indirectly, become the surety for the husband." Section 8272, Code.

The courts look to the substance rather than appearance or form to uncover the true facts. Smith v. D. Rothschild & Co., 212 Ala. 276, 102 So. 206; Fourth Nat. Bank of Montgomery v. Woolfolk, 220 Ala. 344, 125 So. 217; Lamkin v. Lovell, 176 Ala. 334, 339, 58 So. 258; Hendon v. Hendon, 219 Ala. 159, 160, 121 So. 534; Mitchell v. Sessoms Grocery Co. (Ala. Sup.) 153 So. 282; [1] Sims v. Hester, ante, p. 321, 153 So. 281; Marbury Lumber Co. v. Woolfolk, 186 Ala. 254, 65 So. 43.

It is as much within the inhibition of suretyship to deposit or pledge the wife's personal property to secure the payment of the husband's debt, as declared by the statute, as it is to mortgage the wife's property for such forbidden purpose. McNeil v. Davis & Son, 105 Ala. 657, 17 So. 101, an indemnity of suretyship; Corinth Bank & Trust Co. v. Pride, 201 Ala. 683, 79 So. 255, husband's note indorsed and pledged as collateral security; First National Bank v. Nelson, 106 Ala. 535, 18 So. 154; Brooks v. Greil Bros. Co., 179 Ala. 459, 60 So. 387, deposit of rent notes as forbidden security; Vinegar Bend Lumber Co. v. Leftwich, 197 Ala. 352, 72 So. 538; Fourth Nat. Bank of Montgomery v. Woolfolk, supra.

The wife may not ratify such an act violative of the statute, or estop herself to assert the provisions of the statute as against such contract. Sims v. Hester, supra; Evans v. Faircloth-Byrd Merc. Co., 165 Ala. 176, 51 So. 785, 21 Ann. Cas. 1164; Trotter Bros. v. Downs, 200 Ala. 158, 75 So. 906; Corinth Bank & Trust Co. v. Pride, supra; Staples v. City Bank & Trust Co., 194 Ala. 687, 689, 70 So. 115; Richardson v. Stephens, 122 Ala. 301, 25 So. 39; People's Bank v. Barrett, 219 Ala. 258, 121 So. 910.

In Elkins v. Bank of Henry, 180 Ala. 18, 23, 60 So. 96, 97, a case where the recitals in the instrument were that the wife was the principal debtor, the court said: "We recognize the fact that a wife may pay her husband's debts, that she may give him her property, and that she may borrow money and give it to him; but the statute above quoted prohibits her from becoming a surety, directly or indirectly, for his debts. In this case there was a plain effort to evade the statute, and this case is completely covered by the rule declared by this court in Lamkin v. Lovell [176 Ala. 334], 58 So. 258." Bell v. Henderson Nat. Bank, 225 Ala. 398, 143 So. 568.

In People's Bank of Greensboro v. Steinhart, 186 Ala. 205, 207, 65 So. 60, where it was held that, "although the transactions were made to appear as loans to the wife, the proceeds being transferred by her to her husband, the mortgages were void under the facts in this case, in view of the provisions of section 4497, Code 1907," Mr. Chief Justice Anderson said for the court: "We think that the evidence in this case shows that it was the purpose and intention of the complainant's husband and the respondent bank that the proceeds of the mortgages in question should be used as an indirect security for the debt of the husband or of his grocery company, although it may in form appear to be a straight loan to the wife and a subsequent placing by her, of the proceeds to the credit of her husband."

To like effect is the case of Vinegar Bend Lumber Co. v. Leftwich, 197 Ala. 352, 72 So. 538, where the wife conveyed her separate property to the husband and joined with him in the mortgage thereof to secure his debt, with the knowledge of the mortgagee of her rights in the premises, and the transaction was held void as violative of section 4497, Code of 1907.

The courts have made the observation that the wife is much under the influence of the affections; and it is this that the law interposes to guard against and prevent her imposition and reduction to beggary and ruin; hence the wisdom of such statutes forbidding the disposition of the wife's property except as permitted by law. Bibb v. Pope, 43 Ala. 190.

In the recent opinion in Rollings v. Gunter, 211 Ala. 671, 673, 101 So. 446, 448, Mr. Justice Bouldin observed: "As we study this case, we are impressed that both provisions of this statute enter into its solution. All parties were present and participating in a transaction which took the form stated. The idea of making the deed to husband and wife jointly was sprung on the moment, suggested by legal counsel, and caught up by the husband. The wife did not become the actor. Human experience is that a nonresisting wife, accustomed to follow the lead of her husband in business matters, was not likely, in the pres-

---

[1] Ante, p. 260.

ence then confronting her, to do other than acquiesce and sign what she was expected to sign. It does not appear she had or was expected to have any means to pay the debt or any part of it. For all that appears, the husband was expected to carry out his original promise to get the money and pay the debt." Tennessee-Hermitage Nat. Bank v. Hagan, 218 Ala. 390, 395, 119 So. 4, on suretyship.

■ A reading of the evidence and exhibits to the testimony convinces us that the transaction, considered as a whole, shows that there was a large indebtedness of the husband to the appellant, Continental Life Insurance Company, incurred in the conduct of its agency in Birmingham, and that there was an inability of the agent, the husband of appellee, to pay and to continue that agency; that the wife of this agent was possessed of valuable property which she sold to David Silverstein, and, as a part of the purchase price, took notes of David Silverstein aggregating $25,000, together with a mortgage on the property securing same; that the husband and the appellant's agent, on representations made, sought (by way of suretyship of the wife) to have the $12,000 note in controversy transferred by the wife to the husband and passed on by him to the appellant with a knowledge of the facts; and that this, in truth and in fact, operated as a scheme and a design on the part of the appellant and the husband to have Mr. Brandt's indebtedness secured by Mrs. Brandt becoming surety for her husband's debts to the appellant; that the Silverstein notes and mortgage on the property sold by her were payable to Mrs. Brandt, were her separate property in which the husband had no interest; and that this was made known to appellant by its agent, the husband.

It may be said for the husband that he appears to have made this his last effort to secure his debt and save his agency; he so stated to appellant in his letter of date of September 14, 1929.

After communication by wire with the appellant to such end and purpose, he was invited to come, and went, to St. Louis to confer with Mr. Mills, who is shown to be a vice president of appellant; and the course of events immediately thereafter, eventuating there and here, indicates the purpose and design of the parties—to obtain such security to balance the agency's account. This was done through Mrs. Brandt's property, by the obtaining of the note from the wife by the husband; and its use with the company as collateral security for the previous indebted-

ness in question. The letter of transmission of the wife's note to Mills and the receipt therefor by its assistant secretary, Miller, show that it was a "collateral note." It is not satisfactorily shown that Brandt purchased the wife's note before it was so pledged to appellant, and under the immediate facts the appellant was not authorized to believe, at the time it received this collateral of Mrs. Brandt from Mr. Brandt, that the husband was a bona fide purchaser of same, and as such an owner pledged it for his accrued indebtedness and for the further continuance and extension of the agency. The appellant well knew the unsuccessful condition of that agency and the distressed financial status of that agent; that his indebtedness to it was large; that he was subject to pressure for payment by appellant, and was informed by the husband and agent of the wife's resources.

When the matter was closed in the first instance, in November, 1929, by the use as collateral of Mrs. Brandt's note, the appellant, pledgee, well knew of the failing financial condition of Brandt and that agency, was apprised of the lack of lawful authority for such use, as shown on the face of that transaction, and procured the advice of resident counsel. The result of this was the affidavit of date of December 4, 1929, by Mrs. Brandt making material and significant admissions of fact as touching the transaction and the suretyship statute. This paper was prepared in the office of counsel, with Brandt and the company's representative present, and in the absence of Mrs. Brandt. When it was ready for signature, Mrs. Brandt was called to come down, and the immediate circumstances of its preparation and those of its execution and delivery to the appellant indicate a purpose to perfect the former transaction, or remove it from the influence of a forbidden suretyship by the wife for the husband's debts.

When the whole facts are considered, we are convinced that the wife, laboring as she was under great physical disability which forbade her getting out of the car, and having only a short time to read, consider, and understand its import in fact and in legal effect, was not sufficiently advised and protected. Mitchell v. Sessoms Grocery Co., ante, p. 360, 153 So. 282.

The case of Brooks v. Greil Bros. Co., 202 Ala. 607, 81 So. 549, cited by appellant, is different from the case at bar. That case was considered in Corinth Bank & Trust Co. v. Pride, 201 Ala. 683, 79 So. 255, and is authority for the result embodied in the decree of the trial court; so, also, is the case of

First National Bank v. Nelson, 106 Ala. 535, 18 So. 154, cited and discussed in Corinth Bank & Trust Co. v. Pride, supra, but is distinguishable here as affecting a bona fide sale of the wife's property and appropriation of the proceeds for the benefit of the husband, and as affecting a suretyship to secure the husband's debts. It is not necessary to further consider these cases than to observe that Brooks v. Greil Bros. Co., supra, was decided on the ground of general agency of the husband for the wife in the management and disposition of her properties over a long period of years, and in many transactions as to her and that property and the proceeds thereof, Brooks v. Greil Bros. Co., 202 Ala. 607, 81 So. 549; Id., 192 Ala. 235, 68 So. 874; Id., 176 Ala. 577, 58 So. 552; and that in First National Bank v. Nelson, supra, the wife indorsed her notes to the husband, fully clothed with the right and authority, ostensibly to dispose of the same by sale, which Mr. Nelson did to the bank. The case of Corinth Bank & Trust Co. v. Pride, supra, differentiates these cases by drawing a distinction between a sale of the wife's property to procure funds to pay the husband's debts, as was done by Nelson acting as agent for his wife and with ostensible authority, and a pledge of the wife's property to secure the existing debts of the husband to the pledgee. The former was upheld; the latter is condemned by the statute and the decisions.

Appellant cites Osborne v. Cooper, 113 Ala. 405, 21 So. 320, 59 Am. St. Rep. 117, a case distinguishable in law and facts from the instant case. There the wife conveyed to her husband her property by deed for $3,000, and thereafter he mortgaged it to a third person who was held to take as a bona fide purchaser for value. Scott v. Taul, 115 Ala. 529, 22 So. 447, also cited by appellant, was rested upon the sale of a negotiable note of the wife to a bona fide purchaser. These cases are exceptions, falling under the law governing bona fide purchasers of negotiable instruments, which is recognized to exist in Corinth Bank & Trust Co. v. Pride, 201 Ala. 683, 79 So. 255.

In the case at bar it cannot be said, from all the evidence, that appellant was a bona fide purchaser for value of Mrs. Brandt's negotiable note for $12,000, given her by Silverstein, and handed on to appellant with a knowledge of the facts. The appellant knew the note was that of Mrs. Brandt; actively assisted with and through Brandt to procure

the security for its old debt against the husband; was not a bona fide purchaser for value; and, when considered in this light, the case falls within the influence of Corinth Bank & Trust Co. v. Pride, 201 Ala. 683, 79 So. 255, and Vinegar Bend Lumber Co. v. Leftwich, 197 Ala. 352, 72 So. 538.

When this transaction is considered, stripped of its superficial appearance (that did not lead the trial court "away from the true inwardness of the case"), it was and is condemned as an evasion of the statute. Section 8272, Code; Lamkin v. Lovell, 176 Ala. 334, 58 So. 258; Trotter Bros. v. Downs, 200 Ala. 158, 159, 75 So. 906; Garland v. First Nat. Bank of Scottsboro, 153 So. 743;[1] Dewberry v. Bank of Standing Rock, 227 Ala. 484, 150 So. 463; Sims v. Hester (Ala. Sup.) 153 So. 281;[2] Mitchell v. Sessoms Grocery Co., ante, p. 360, 153 So. 282. See, also, Cotton v. First Nat. Bank of Opp, ante, p. 311, 153 So. 225.

The decree of the circuit court is therefore affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.

