167 So. 550

## CLARK v. LINEVILLE NAT. BANK et al.

### 7 Div. 365.

Supreme Court of Alabama.

April 16, 1936.

Walter S. Smith and Walter S. Smith, Jr., both of Birmingham, for appellant.

Pruet & Glass, of Ashland, for appellees.

THOMAS, Justice.

The bill was for cancellation of a mortgage or for redemption, as the case may require.

The rules that obtain and applicable to such a case are expressed in the statute, section 8272, Code of 1923, and our decisions. Ex parte Ina K. Lacy, 168 So. 554;[1] Continental Life Ins. Co. of St. Louis, Mo., v. Brandt, 228 Ala. 570, 154 So. 903; Dewberry et al. v. Bank of Standing Rock et al., 227 Ala. 484, 150 So. 463; Sims v. Hester et al., 228 Ala. 321, 153 So. 281; Staples et al. v. Barret et al., 214 Ala. 680, 108 So. 742, 46 A.L.R. 1084; Trotter Bros. v. Downs, 200 Ala. 158, 75 So. 906; Staples v. City Bank & Trust Co., 194 Ala. 687, 70 So. 115; Garland v. First Nat. Bank of Scottsboro et al., 228 Ala. 480, 153 So. 743; Van Derslice v. Merchants' Bank, 213 Ala. 237, 104 So. 663; Smith v. D. Rothschild & Co., 212 Ala. 276, 102 So. 206; Alabama Farm Bureau Credit Corporation v. Helms, 227 Ala. 636, 151 So. 589; Lamkin v. Lovell, 176 Ala. 334, 58 So. 258; Spencer v. Leland et al., 178 Ala. 282, 59 So. 593; Trost v. Beck, 211 Ala. 323, 100 So. 472.

It is declared that, where a bill is filed by a wife to enforce the equitable right of redemption, an averment of prior tender is not necessary to the equity of such a bill, provided she offers to pay all that might be found due, and to do equity in the premises, as declared by the court. Dewberry et al. v. Bank of Standing Rock et al., 227 Ala. 484, 150 So. 463; Murphree v. Summerlin, 114 Ala. 54, 21 So. 470.

It is further decided that where, on the pleadings and proof, the right for accounting as to the main relief prayed is shown, the court will adjust the rights of the respective parties and grant relief accordingly, where such rights grow out of, and are inseparably connected with, the subject-matter to which relief may be and is granted. Dewberry et al. v. Bank of Standing Rock et al., 227 Ala. 484, 150 So. 463; Zadek et al. v. Burnett et al., 176 Ala. 80, 57 So. 447.

---

[1] Post, p. 525.

176

And, where the decree is for cancellation of a mortgage and an auctioneer's deed, affecting the land, the court will order the register to enter upon the margin of the records in the probate office its cancellation (Sims v. Hester et al., 228 Ala. 321, 153 So. 281) and tax the costs of the appeal and of the suit as is deemed just.

The evidence shows that the complainant wife was not primarily liable for any part of the debt sought to be secured by the mortgage, and that the giving of that mortgage was to secure the debt of the husband; she being "a mere volunteer." Hanchey v. Powell, 171 Ala. 597, 55 So. 97; Richardson v. Stephens, 122 Ala. 301, 25 So. 39; Alabama Chemical Co. v. Hall, 212 Ala. 8, 101 So. 456. Though not presented here, but as illustrative of our application of the statute, it is declared that the fact that such debt was renewed and signed by the wife did not affect the wife's nonliability for the husband's debt. Continental Bank of Memphis v. Clarke, 117 Ala. 292, 22 So. 988.

In Continental Life Ins. Co. of St. Louis, Mo., v. Brandt, 228 Ala. 570, 573, 154 So. 903, 904, the observation contained in Rollings v. Gunter, 211 Ala. 671, 101 So. 446, follows: " 'The idea of making the deed to husband and wife jointly was sprung on the moment, suggested by legal counsel, and caught up by the husband. The wife did not become the actor. Human experience is that a nonresisting wife, accustomed to follow the lead of her husband in business matters, was not likely, in the presence then confronting her, to do other than acquiesce and sign what she was expected to sign. It does not appear she had or was expected to have any means to pay the debt or any part of it. For all that appears, the husband was expected to carry out his original promise to get the money and pay the debt.' Tennessee-Hermitage Nat. Bank v. Hagan, 218 Ala. 390, 395, 119 So. 4, on suretyship."

The evidence is undisputed that the debt sought to be secured was the debt of the husband, (1) for a horse purchased by the husband, on which he executed a mortgage to John O. Denson; (2) for a judgment rendered in favor of J. N. Mitchell for the sums of $135 and $8, respectively; (3) for fertilizers; and (4) for fertilizers furnished and sold to the husband per agreement with S. J. Gay.

The evidence is further undisputed that the complainant wife bought the 20-acre tract of land covered by the mortgage to S. J. Gay from James A. Bell on November 14, 1908, paying the consideration of $900 therefor; that the husband furnished no part of that consideration, though the deed named the wife and husband as grantees; that the husband (J. T. Clark) had before or at the time the mortgage in question was executed conveyed to the wife all his right, title, interest, and estate; that at that time the mortgagee Gay knew that the wife had in her hand the deed so executed, and knew that it was the wife's land.

It is further established by the officer taking the acknowledgments that the mortgage to Gay and the deed from the husband to the wife were executed and acknowledged at the same time; and it is further shown by the evidence that more than one effort was made by Gay to induce complainant to sign the mortgage to secure her husband's debt.

The complainant as a witness testified: "I never did owe Dr. Gay the sum of $358.38 recited in the mortgage, or owe him any other sum. It was the debt of my husband J. T. Clark. * * * My daughter, Pearl Clark, walked into the room when I told Mr. Jones that I had been forced by my husband to sign the mortgage and that that was going to be the last thing that I was ever going to be forced to do, that I would suffer the consequences. He usually gets his gun when he wants me to do anything but he did not have his gun on this occasion, but had his knife opened and threatened to kill me unless I signed the mortgage. Dr. Gay and Mr. Clark came up to my house twice on the day the mortgage was signed, and the first time they came and Dr. Gay explained the mortgage and that he would take up other debts or matters if I would execute the mortgage and I told him that I would not do it, and it was then that my husband J. T. Clark took me on the back porch and threatened my life. I told Dr. Gay that I guessed that I had told him a lie, that I had said I would not sign the mortgage but that I was forced to sign it and that I guessed I would be forced to sign it."

The testimony of Pearl Clark confirmed the statement of complainant that she was coerced by her husband to execute the mortgage, and that Gay had knowledge of such fact.

The justice of the peace taking the acknowledgments to the deed from Clark to

his wife and to the mortgage from the Clarks to Gay on the same day testified that the mortgagee carried him to Mrs. Clark's house; that "all the way over to Mr. Clark's, Dr. Gay explained to me that this was being done in order to save Mr. Clark's feedstuff and horse"; that witness knew at the time of the execution being out and the property being levied on. On cross-examination the witness testified: "On the 16th day of February 1927, about 7:30 or 8:00 o'clock carried me over to John Clark's house on February 16th, the date I dated the acknowledgment, and I took his and his wife's acknowledgment on that date. The evidence shows that Mrs. Clark delivered the deed and the mortgage to Dr. Gay that night to be recorded, and the record shows that the mortgage was recorded on the 17th day of February at 10:00 o'clock A. M. I did not go to Mrs. Clark's on two dates to take the acknowledgments. It was all done there on one date. I did not take the acknowledgment of the deed on one day and acknowledgment of the mortgage on another date. I wrote 16th in my own handwriting in the acknowledgments to the mortgage. Dr. Gay called my attention to the fact that the deed was dated the 17th, the following day, and he wanted the dates to correspond. Dr. Gay did call my attention to the fact that the mortgage was dated on February 17th. He was not in the room. He and John Clark were on the front porch. I was there in the room at Mrs. Clark's home with all of them when Dr. Gay called my attention to·the fact that the deed was dated on February 17th. After examining the deed I state that I wrote the 17th in the deed. It does not seem now like the deed was dated the 17th but the mortgage was dated the 17th."

This shows that the deed from Clark to his wife and the mortgage from the Clarks to Gay were executed at the same time, February 16, 1927; that the instrument dated February 17, 1927, was so indicated at Gay's request, and the conveyance delivered to Gay for filing for record.

The decree of the circuit court is in error in not canceling the mortgage and the auctioneer's deed to the wife's property, as prayed for in her bill, and a decree will be here entered granting her that relief.

Reversed and rendered.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.

