168 So. 554

## Ex parte LACY.

## LACY v. COMMERCIAL NAT. BANK OF ANNISTON.

7 Div. 362.

Supreme Court of Alabama.

April 30, 1936.

Rehearing Denied June 11, 1936.

526
526

Ross Blackmon and Knox, Acker, Sterne & Liles, all of Anniston, for appellant.

Merrill, Jones & Whiteside, of Anniston, for appellee.

THOMAS, Justice.

The submission was upon the petition for writ of prohibition or mandamus, and on the merits, as one case.

The prayer of the petition was that the respondent, the presiding judge in said cause, enter an order suspending the enforcement of the decree pending the appeal to this court; the grounds thereof being that petitioner was a married woman when the bill was filed, that her husband died before final submission and decree, and that she alleges she is entitled to the benefits accorded to a married woman under section 6138 of the Code.

That statute provides: "From any judgment, order or decree of any court of record, subjecting to sale any property of, or for the payment of money or the doing or performing any act by any married woman, she is entitled to an appeal to the supreme court or court of appeals to revise such judgment, order, or decree, without giving security for the costs of appeal; on making

528

affidavit that she is unable to give such security; and such appeal shall operate as a suspension and stay of any proceedings under such judgment, order or decree until such appeal shall be determined by the supreme court or court of appeals." Section 6138, Code 1923.

Under the facts contained in the pleading, the specific wording of the statute, and the analogy contained in constructions of the statute and cases coming within its purview, the appeal as taken did not supersede the execution of the decree. She was not subject to the disability of coverature at the time of the appeal. Lea v. Phillips et ux., 216 Ala. 35, 112 So. 323; Ex parte Johns et al., 209 Ala. 638, 96 So. 888; Ex parte Watkins (Citizens' Bank v. Watkins), 226 Ala. 634, 148 So. 335.

A decree or judgment dates from the time of its rendition. Sims' Chan. Prac. § 565, p. 325; Ex parte Massie, 131 Ala. 62, 31 So. 483, 56 L.R.A. 671, 90 Am.St.Rep. 20; Powe v. McLeod & Co., 76 Ala. 418.

It is held that the filing of an affidavit of inability to give security for costs of appeal will not supersede execution of the decree, when such security has been previously filed. Ex parte Barkley, 210 Ala. 466, 98 So. 463.

It follows that the petition and writ prayed is denied. However, the petition and the merits were submitted as one, and we must proceed to a consideration of the latter.

On this appeal, the original complainant, Ina K. Lacy, in challenging the action of the trial court assigns, among others, the following errors:

"1. The court erred in its decree * * * in determining that the transfer by the appellant, Ina K. Lacy, of the fifty shares of her capital stock in respondent bank to have been an outright sale of said stock by the appellant to said bank, and not a pledge thereof as a surety, either directly or indirectly, of the indebtedness of S. A. Lacy to said bank."

"4. The court erred in its decree to the effect that $3,340.91, of the money loaned by the Commercial National Bank in pursuance of the mortgage involved in this cause, which was executed to the bank by the appellant here, to secure the payment of said bank of $6,500, was turned over to S. A. Lacy in pursuance of an agreement with Ina K. Lacy, said Commercial National Bank and S. A. Lacy, that said funds should be paid over by Ina K. Lacy to S.

A. Lacy and be used by him in paying off his indebtedness in part to the First National Bank of Eutaw * * *.

"5. The court erred in applying any portion of the $3,340.91 realized out of Mrs. Ina K. Lacy's real estate mortgage loan to the indebtedness of the First National Bank of Eutaw * * *.

"6. The court erred in its decree in prorating the payments which were made on the mortgage indebtedness of $6,500 involved in this record, ratably between the void portion of the mortgage, to-wit: $3,340.91, and the valid portion of the mortgage, to-wit: $3,159.09, it being true as a matter of law that the court was without authority to impart validity to the void part of the transaction * * *.

"7. The court erred in failing to credit the $3,159.09, part of the mortgage loan determined by its decree to have been valid with the entire payments of interest and principal made on the original mortgage indebtedness of $6,500, by reason of the fact that this valid portion of said mortgage indebtedness was the only legal and binding liability against the appellant, the payment of which was secured as a matter of law by the real estate mortgage involved in this suit * * *.

"8. The court erred in its decree in the cause in deciding that the appellant was not entitled to recover from the appellee the $6,000 in cash representing the stock transaction together with the $3,340.91, representing the void portion of the real estate mortgage, making a total sum of $9,340.91, which the court should have decreed to have been due by the bank to the appellant with interest thereon from to-wit: 15th day of January, 1930, * * *.

"9. The court erred in decreeing the transfer of the stock by Ina K. Lacy to the Commercial National Bank, and the real estate mortgage by her to said bank to have been separate and distinct transactions by decreeing in effect the transfer of the stock to have been an outright sale and not a part of one loan and one transaction * * *."

The original bill by appellant challenged the transaction or agreement of parties under the statute, Code, § 8272, as to the transfer of complainant's stock in respondent bank; the mortgage of her real properties and application of funds derived to the security and payment of the husband's large indebtedness to respondent bank. A cross-bill was filed by the bank

challenging the validity of complainant's title to the real estate mortgaged, under the deed from her husband for a valuable consideration. The trial court sustained its validity, and the evidence supports that finding; there is no cross-appeal, and the decree in this respect is correct. Moore et al. v. Esslinger et al. (Maryland Casualty Co. et al. v. Moore et al.), ante, p. 251, 167 So. 328.

■ The trial court correctly found that the mortgage from Mrs. Lacy to respondent bank was valid as to the amount or extent thereof, as proceeds therefrom were applied to complainant's debts to the bank. And in this respect the decree is affirmed. All payments made thereon by Mrs. Lacy are to be appropriated to the reduction of her mortgage, leaving a balance, as we understand the evidence, of about $2,482.11, and interest. This is the result of the rule of application of payments to the debt such debtor is bound to pay under the law. Osborne v. Cooper, 113 Ala. 405, 410, 21 So. 320, 59 Am.St.Rep. 117; Armour Packing Co. of La., Ltd., v. Vinegar Bend Lumber Co., 149 Ala. 205, 42 So. 866, 13 Ann.Cas. 951; Tuscaloosa Lumber Co. v. Tropical Paint & Oil Co., 211 Ala. 258, 100 So. 236; Leath et ux. v. Hancock, 210 Ala. 374, 98 So. 274; Taylor & Co. v. Cockrell et al., 80 Ala. 236.

■ The evidence shows that Mrs. Lacy never gave direction or consent as to how her payments on the mortgage on her home should be applied. Therefore, the bank has no right to make application of payments, principal or interest, upon or to the illegal and unenforceable amounts of indebtedness embraced in Mrs. Lacy's mortgage; nor had the bank the right to apply to other debts the proceeds of the sale of stock held by the Bank of Eutaw as collateral, without consent and not to the prejudice of the wife.

The court was in error in treating the transaction as to the wife's shares of stock in respondent bank, the giving of the mortgage on the wife's home, and the payment of the draft by the Eutaw Bank, as several and not one transaction. They were all done in the adjustment, liquidation, or payment of the husband's debts. Was, then, dealing with her bank stock, giving a mortgage on her home, and giving her husband a check, *under the agreement* that the moneys paid her by the bank would be so used and be immediately paid by him back to the bank on his debt, condemned as an evasion of the statute and ruled by the decisions applying to that statute? Trotter Bros. v. Downs, 200 Ala. 158, 75 So. 906.

■ We have indicated that the mortgage given by the wife, to the extent that it was surety for the husband, will be condemned; and will be held valid to the extent that it was given to pay or secure her separate debt. Trotter Bros. v. Downs, supra: Mills et al. v. Hudmon & Co., 175 Ala. 448, 57 So. 739; Staples v. City Bank & Trust Co., 194 Ala. 687, 70 So. 115. The case of Bell v. Henderson Nat. Bank, 225 Ala. 398, 143 So. 568, 569, involved "the rights of a purchaser from the husband to whom the wife had conveyed the property and where the proof fails to connect the third party with practicing or participating in any fraud on the wife." In this case, the evidence shows no debt or moneyed benefit accrued to or was assumed by the wife in the payment of the husband's debt to the bank, or in payment of the draft to the Eutaw Bank, which resulted in a release of the husband's stock held as collateral therefor. Mrs. Lacy was not, nor will she be, chargeable with any part thereof; and her moneys on further accounting or proration may not be applied for that purpose as security or payment, under the facts before us.

■ There are certain rules, long established under the statutory provision before us to the effect, that courts look to the substance rather than the form of a transaction in determining whether the statute forbidding the wife from becoming surety for the husband has been violated; that a pledge or mortgage of the wife's personal property to secure payment of the husband's debts is within the interdiction of the statute; that the wife cannot ratify a contract pledging her personal property to secure payment of the husband's debt, nor be estopped from asserting that statute. The authorities are collected in Continental Life Ins. Co. of St. Louis, Mo., v. Brandt, 228 Ala. 570, 154 So. 903.

The question was well stated in Van Derslice v. Merchants' Bank, 213 Ala. 237, 241, 104 So. 663, 666, by Mr. Justice Somerville, as follows: "It must now be regarded as the settled law in this state, that when the wife borrows money from the husband's creditor, giving her own obligation therefor, and forthwith pays over the money to that creditor in satisfaction of her husband's debt to him, she

indirectly becomes a surety for her husband's debt, within the inhibition of the statute. Lamkin v. Lovell, 176 Ala. 334, 58 So. 258; Staples v. City Bank & Trust Co., 194 Ala. 687, 70 So. 115; Elkins v. Bank of Henry, 180 Ala. 18, 60 So. 96; Vinegar Bend Lumber Co. v. Leftwich, 197 Ala. 352, 72 So. 538; Street v. Alexander City Bank, 203 Ala. 97, 82 So. 111. A dictum in Hall v. Gordon, supra [189 Ala. 301, 66 So. 493], repeated in Bushard v. McCay, supra [201 Ala. 173, 77 So. 699], is apparently not in harmony with the rule as established by these decisions, but the question was not presented in those cases, and they cannot be regarded as authorities contra. In such a case the law presumes an intention to evade the statute by the mere substitution of the wife's obligation for that of the husband—the original debt of the husband remaining in fact unpaid, notwithstanding its change of raiment."

See, also, Garland v. First Nat. Bank of Scottsboro et al., 228 Ala. 480, 153 So. 743; Dewberry et al. v. Bank of Standing Rock et al., 227 Ala. 484, 150 So. 463.

In Mitchell et al. v. Sessoms Grocery Co., 228 Ala. 360, 361, 153 So. 282, 283, the declaration is made: "That where a wife gives a mortgage on her property and receives a check therefor, and immediately indorses and returns the same to the mortgagee, in pursuance of a prior design, as security for the husband's debt or contract, it will be considered that the wife did not have any freedom in disposing of the money so obtained, and that the arrangement was an agreement for suretyship in accordance with the statute. Bell v. Farmers' Nat. Bank, supra [214 Ala. 211, 106 So. 851]; Spencer v. Leland, 178 Ala. 282, 59 So. 593; Smith v. Thompson, 201 Ala. 633, 79 So. 195; People's Bank of Greensboro v. Steinhart, 186 Ala. 205, 65 So. 60; Lamkin v. Lovell, 176 Ala. 334, 58 So. 258."

And in Trotter Bros. v. Downs, 200 Ala. 158, 159, 75 So. 906, 907, it was observed: "Where it is clear that the transaction is different from what it purports to be, where the parties move circuitously to the end in view, as if to evade the statute, and where the true intent and meaning of what the wife does is to give her obligation, payable in the future and secured by a mortgage, to the husband's creditor—all facts established in this case—the necessary effect is to constitute the wife's note

and mortgage a collateral security for the husband's debt. The language of the statute is that 'the wife shall not, directly or indirectly, become the surety for the husband'; and equity's invariable process is to look through the form to the substance. No superficial appearance will be permitted to lead the court away from the true inwardness of the case."

That the instant case is different from the facts of Hogan v. Moore, 221 Ala. 355, 128 So. 790, and Bell v. Farmers' Nat. Bank of Opelika et al., 214 Ala. 211, 106 So. 851, is illustrated by the questions propounded to the defendant under the statute, and the answers thereto, which are in part as follows:

"Q. (e) Is it not true that the money the Commercial National Bank paid Mrs. Ina K. Lacy for her fifty shares of the capital stock of said bank was paid her for said shares if the understanding that she turn it over to either her husband, S. A. Lacy, to return to the bank, or that she herself use the money to pay the bank on the indebtedness of her said husband? A. (e) No. It was understood that the money received from the complainant from the sale of stock would be delivered to complainant's husband, and that he would place it with other funds to his credit in paying and discharging his indebtedness to defendant, and other creditors, and for such other purposes as he desired. * * *

"Q. (g) Is it not true that the proceeds of this loan and the transfer of this capital stock were used either in whole or in part to pay off and discharge to the bank the indebtedness of S. A. Lacy to the bank at the time this transaction took place? A. (g) The complainant drew her check in favor of S. A. Lacy for $9,341.91, which was deposited by him on February 16th, 1930, in the Commercial National Bank to his own credit, and on said date his total deposits in said bank amounted to $13,733.91. S. A. Lacy drew his check on said date in favor of the Commercial National Bank for $11,194.15, which was applied on his indebtedness to said bank. * * *

"Q. (i) Could Mrs. Ina K. Lacy have taken the money which she borrowed from the Commercial National Bank, secured by her mortgage on her real estate dated January 15, 1930, and do with it as she pleased? A. (i) It was understood that

$3159.19 of said loan was to be paid on her personal note to the bank.

"Q. (j) Was Mrs. Ina K. Lacy obligated to the bank in any manner for the husband's indebtedness at the time that she transferred her stock to the Commercial National Bank or made her mortgage to the same as involved in this suit? A. (j) No.

"Q. (k) Is it not true that C. R. Bell, President of the said Bank, knew what was to be done with the proceeds of this loan when the note and mortgage of Mrs. Ina K. Lacy were delivered to the bank, signed and executed by her? A. (k) The complainant had explained to C. R. Bell, President of the defendant Bank, how she expected to use the proceeds of her loan.

"Q. (1) Is it not true that C. R. Bell, President of the Bank, was present in the law office of the Bank's attorneys and directed and advised the Bank's attorneys as to the purpose for which said loan was being made to Mrs. Ina K. Lacy? A. (1) Yes. He advised with attorneys as to said loan.

"Q. (m) Is it not true that the law of Alabama, as it relates to the suretyship of a married woman of the indebtedness of her husband, was discussed and considered by C. R. Bell and the Bank's attorneys with reference to this transaction? A. (m) Yes.

"Q. (n) Is it not true that the plan pursued was devised by the Bank's attorneys as an effort to evade the statutes of Alabama relating to the suretyship of a wife of a debt of her husband? Answer this question fully, carefully, completely under the oath or oaths of your executive officers. A. (n) It is not true that there was any effort or attempt on the part of the defendant Bank to evade the statutes of Alabama relating to suretyship of the wife of her husband's debt at the time the loan was made to the complainant, or at any other time prior thereto."

Had the wife, under the whole evidence, the required freedom of disposal of the moneys advanced by the respondent bank for her own use and purpose? If not, the arrangement, as one transaction and to the extent that the funds or the proceeds thereof were used in payment of the husband's debt, was condemned under the statute as a suretyship. Mitchell et al. v. Sessoms Grocery Co., 228 Ala. 360, 153

So. 282; Continental Life Ins. Co. of St. Louis, Mo., v. Brandt, 228 Ala. 570, 154 So. 903; Spencer v. Leland et al., 178 Ala. 282, 59 So. 593.

In Bell v. Farmers' Nat. Bank of Opelika et al., 214 Ala. 211, 213, 106 So. 851, 852, the correctness of the decision in Spencer v. Leland et al., supra, was approved with the following observation:

"Emphasis is laid in the opinion upon the fact that the lender never parted with a beneficial interest in the money. It was loaned by one hand and taken back by the other in materials for his buildings. Neither the wife nor the husband ever had the fund for free use for outside purposes. Says the opinion:

"'If the mortgagee had retained no interest in the money lent, the view taken by the court below would have been sound.'

"In the present case the fund went to the husband for his own free use in the conduct of his own business. The deposit in the lending bank was subject to his check, not in payment of his obligations to the bank, but in the purchase of cotton for his own benefit. The deposit in the bank was in consideration of other favors to be extended in aid of his personal business. The Leland Case is an application of the same principle recently stated in Van Derslice v. Merchants' Bank, 213 Ala. 237, 104 So. 663, 666."

We have quoted above from the case of Van Derslice v. Merchants' Bank, 213 Ala. 237, 241, 104 So. 663.

When the whole transaction is considered in substance and practical effect, neither the wife nor the husband was free to use the moneys in question, other than to apply same to the debts of the parties held by the bank—as was done in the premises.

When the distinguished attorney's evidence is considered in its entirety, as we understand it, the pledge of the stock, which had taken place on November 8, 1929, and witnessed by Mr. Bell, had been abandoned before the parties came to his office, and Mrs. Lacy stated that she and Bell had agreed upon a sale of the stock. This statement did not narrow the consideration to the one occasion when and where the papers were drawn; nor did it lay out of the case the other conferences and considerations that led up to, entered into, and gave substance to the one transaction and disclosed the intent of the sev-

eral parties in furnishing the moneys and their due application under the law. This continuity of purpose, as affecting an indirect evasion of the statute, is shown by Mr. Justice Sayre in Spencer v. Leland et al., 178 Ala. 282, 285, 286, 287, ·59 So. 593, 594, saying: "This view omitted Hamlet from the play. If the mortgagee's purpose and business had been to make a loan to complainant, if it had been intended that the sum secured was to be placed at the free disposal of the mortgagor, if the mortgagee had retained no interest in the money lent, the view taken by the court below would have been sound. But the unavoidable fact is that the entire dealing between the parties was shaped by considerations springing out of the building contract. It is so clearly inferable as to leave no sort of room for doubt that without the building contract there would have been no loan of money nor any mortgage. Without consideration of the contract it is impossible to know what the parties intended or even what they actually accomplished. The contract excluded from view, we see only the form of the mortgage. But equity looks to the intent rather than to the form. It will in no case permit the veil of form to hide the true effect or intention of the transaction. Eaton's Eq. 81. Equity disregards names, and penetrates disguises, to get at the substance beneath. Id. 83. * * * When we look to the entire transaction between these parties, it is impossible to doubt that the parties having in mind that the statute (Code, § 4497), with its provision that 'the wife shall not, directly or indirectly, become surety for the husband,' would prevent the wife's mortgage to secure a loan to the husband or the husband's performance of the building contract, nevertheless contrived to secure an equivalent result by casting the transaction into the form of a loan to the wife coupled with an understanding—a condition of the loan in effect—that the money lent should be used for the sole purpose of securing the husband's performance of his contract with the lender. That this was a mere indirection is plain, nor is its status, purpose, or effect changed by the fact that the mortgagee had no interest in the Hardware Company or that the contractor made no engagement to pay money to the lender. By his contract the contractor was obliged to put $500 into the defendant's building and this obligation was secured by the mortgage. This interest of

the lender in the wife's application of the money, as was said in Third National Bank v. Tierney, 128 Ky. 836, 110 S.W. 293, 33 Ky.Law Rep. 418, 18 L.R.A.(N.S.) 81, is 'the essential thing that places his relation to the transaction in a different attitude from that of the person who, as an original business proposition, lends the wife money to do with as she pleases, and who derives no benefit or advantage except such as grows out of the interest or profit he may secure from the loan of the money.' This transaction must be condemned as an evasion of the statute, or the statute itself must be nullified." Lamkin v. Lovell, 176 Ala. 334, 58 So. 258.

The foregoing authorities will afford a sufficient guide in the rendition of a proper decree.

When the evidence and the several details of the whole transaction to the consummated end are carefully considered, we are clear to the conclusion that it was the design and accomplishment that the wife become surety for the husband's debts in pledging her stock in the respondent bank in the first and last instances, and in executing her mortgage to said respondent-appellee that was denied by the statute. The wife's debt was amply secured, and there is no evidence that respondent was under apprehension as to its security or payment; it was the husband's debt that was giving respondent concern and stimulating its effort to induce the wife directly or indirectly to come to his and its aid, which was denied by the statute. And the last accomplishment was not a sale of her stock then in possession of the bank, but its pledge for the husband's debt.

A detailed recitation of the evidence of Lacy, his wife, Bell, Stanley, or his counsel, and the record evidence of the transaction, as receipt given for the stock, the mortgage, certificate of deposit, several checks given, and credits entered, would serve no good purpose. When it is all duly considered, it was one effort to secure payment of the husband's debt by the suretyship of the wife, which was and is denied by law. The law was understood and discussed by the respondents and may not be accomplished by the one transaction, as to the stock and mortgage of the wife.

It will be observed, on accounting, that Mr. and Mrs. Lacy testified that Mr. Lacy has repaid to Mrs. Lacy the sum of $2,-

300 on the moneys she gave the bank as security for the husband's debt. She is not entitled to another recovery of *this* sum, which will be deducted on accounting.

The foregoing is sufficient to indicate that another and final accounting should be had between the respective parties in interest, and to that end the decree of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.